### JACK GOLDBERG *v.* ZONING COMMISSION OF THE TOWN OF SIMSBURY

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and BARBER, Js.

24

Argued February 2—decision released April 26, 1977

*Bertlen F. Turner,* for the appellant (plaintiff).

*Peter B. Sullivan,* with whom was *Bruce G. MacDermid,* for the appellee (defendant).

BOGDANSKI, J. This appeal concerns the defendant commission's denial of the plaintiff's application for site plan approval of a retail shopping mall on property located at the corner of Stratton Brook Road and Bushy Hill Road in the town of Simsbury, and located in a B-3 zone (designed business development zone). On appeal, the Court of Common Pleas found that the commission did not act illegally, arbitrarily or in abuse of its discretion and dismissed the appeal. From that judgment, and after our grant of certification, the plaintiff appealed to this court assigning error in the conclusions of the court. The plaintiff claims that the reasons given by the commission for the denial of the application are not supported by the record, and that because a shopping mall is a permitted use in a B-3 zone the commission had no alternative but to grant the application.

In denying the plaintiff's application, the commission stated its reasons as follows: (1) No proof of need for the proposed use was established by the applicant; (2) a shopping mall of the scope proposed with its related traffic activity and after-dark operation would be most harmful to the residential character of the neighborhood; and (3) because of the inherent nature of the location and operation of the proposed development, the commission was unable to establish any safeguards to protect adjacent property or the neighborhood from the detrimental effect of a shopping center.

The trial court decided the appeal on the record returned by the commission and made no finding of facts other than a limited one on the issue of aggrievement, which issue is not before us. We therefore consult the memorandum of decision to ascertain the conclusions on which the trial court based its judgment. *A. P. & W. Holding Corporation* v. *Planning & Zoning Board,* 167 Conn. 182, 187, 355 A.2d 91; *Miklus* v. *Zoning Board of Appeals,* 154 Conn. 399, 400, 225 A.2d 637. The trial court confined its inquiry to two issues: whether the reasons given by the commission were reasonably supported by the record, and whether those reasons were pertinent considerations which the commission was required to apply under the applicable zoning regulations. *Holt-Lock, Inc.* v. *Zoning & Planning Commission,* 161 Conn. 182, 190, 286 A.2d 299. Both of the above issues were answered in the affirmative.

"Where a zoning authority has stated its reasons [for its action], in accordance with General Statutes § 8-3, the reviewing court ought only to determine whether the assigned grounds are reasonably supported by the record and whether they are per-

tinent to the considerations which the authority was required to apply under the zoning regulations. *DeMaria* v. *Planning & Zoning Commission,* 159 Conn. 534, 540, 271 A.2d 105. The [commission's action] must be sustained if even one of the stated reasons is sufficient to support it. *Zygmont* v. *Planning & Zoning Commission,* 152 Conn. 550, 553, 210 A.2d 172." *First Hartford Realty Corporation* v. *Plan & Zoning Commission,* 165 Conn. 533, 543, 338 A.2d 490. If any one of the reasons supports the action of the commission, the plaintiff must fail in his appeal. *Senior* v. *Zoning Commission,* 146 Conn. 531, 534, 153 A.2d 415, appeal dismissed, 363 U.S. 143, 80 S. Ct. 1083, 4 L. Ed. 2d 1145.

In testing the correctness of those conclusions, we review the facts in the record on which they are based. "That record is the one submitted to us pursuant to Practice Book § 647 as it may be supplemented by any relevant portions of the record before the [commission] which are printed in the appendices to the briefs pursuant to Practice Book § 719." *Miklus* v. *Zoning Board of Appeals,* supra, 401. Both parties filed appendices to their briefs on the evidence presented to the commission at its hearing. While some of that evidence was conflicting, there was testimony to the effect that there was no need for a shopping mall at this location; that additional traffic would be generated from the shopping mall that would overburden Bushy Hill Road which is already overburdened; that additional traffic would have an adverse impact on the school facilities of Ethel Walker School, the buildings of which are located on both sides of Bushy Hill Road; and that the proposed site plan failed to establish sufficient safeguards to protect the area from the detrimental effect of a shopping mall.

In reviewing that evidence, the trial court could not substitute its own judgment for that of the zoning authority. *Horvath* v. *Zoning Board of Appeals,* 163 Conn. 609, 316 A.2d 418. Because the local authority is close to the circumstances and conditions which create the problem and shape its solution, zoning authorities are given wide discretion in determining public need and the means of meeting it. *Lurie* v. *Planning & Zoning Commission,* 160 Conn. 295, 312, 278 A.2d 799. In light of the above, the trial court was correct in concluding that the reasons given by the commission were reasonably supported by the record.

The plaintiff contends that the reason set forth by the commission that no need was established for the proposed shopping mall was not a pertinent consideration; that the issue of need was resolved when the subject property was changed to a business 3 zone in 1966; that it is when a zone change is contemplated that it is appropriate to consider the needs of the town, not when, as here, a site plan approval is sought for a use already permitted. He argues that the issue of need was not relevant and that the commission and the trial court erred in ruling otherwise.

The above argument represents an attack against only one of the three reasons given for the denial. The question remains whether any of the reasons assigned by the commission were pertinent considerations on which the commission could base its denial of the plaintiff's application.

At the outset, it should be observed that retail stores are permitted uses in a B-3 zone. Nowhere, however, in either a B-3, B-2 or B-1 zone are there

any provisions to the effect that a shopping center as such is a permitted use. There is, however, mention made in the zoning regulations that "[i]t shall be the intent of these regulations to permit the development of groups of principal buildings on a single lot or other variance from the specific lot requirement of these regulations only under the *strictest control* to assure that the intent of these regulations is carried out." (Emphasis added.)

A proposal for a single retail store on a single lot is one thing: a proposal to develop numerous retail stores in one large shopping complex is something else. To claim that there is no difference between the two is to ignore realities. To say that the zoning authority may not exercise greater control over one proposal than over the other is to ignore not only the nature of the uses but the provisions of the zoning regulations and the provisions of § 8-2 of the General Statutes. The plaintiff appears to argue that because retail stores are a permitted use it therefore follows that "the development of groups of principal buildings on a single lot or other variance from the specific lot requirement" is also a permitted use with no alternative on the part of the commission but to grant the site plan approval. That contention lacks merit in view of the legal duty resting on the zoning authority to adhere to the town's comprehensive plan, its zoning regulations and the statutes.

Although there is no question that retail stores are a permitted use in a B-3 zone, an application for the development of groups of buildings for one total project must satisfy standards set forth in the zoning regulations themselves as well as conditions necessary to protect health, safety, conveni-

ence and property values. General Statutes § 8-2.[1] Acting in an administrative capacity, the commission's function is to determine whether the applicant's proposed use is one which satisfies the standards set forth in the regulations and the statutes. *Housatonic Terminal Corporation* v. *Planning & Zoning Board,* 168 Conn. 304, 307, 362 A.2d 1375.

Article 10 of the Simsbury zoning regulations, § A, entitled "Designed Development Districts," states as follows: "The Zoning Regulation is designed for the typical development of a *single* principal detached structure on a *single lot.* It shall be the intent of these regulations to permit the development of groups of principal buildings on a single lot or other variance from the specific lot requirement of these regulations only under the *strictest control* to assure that the intent of these regulations is carried out." (Emphasis added.)

"The following zones are established to allow such variation and to permit a total project to be developed as a single unit. Site Plan approval by the Zoning Commission and review by the Planning Commission is required before a building permit is issued. . . . B-3 Designed Business Development Zone."

---

[1] "[General Statutes] Sec. 8-2. REGULATIONS. . . . Such regulations shall be made in accordance with a comprehensive plan and shall be designed to lessen congestion in the streets; to secure safety from fire, panic, flood and other dangers; . . . to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population and to facilitate the adequate provision for . . . sewerage . . . and other public requirements. Such regulations shall be made with reasonable consideration as to the character of the district . . . and with a view to conserving . . . and encouraging the most appropriate use of the land . . . ."

The uses permitted in a B-3 zone are subject to article 10, § A, of the Simsbury zoning regulations, which regulation requires that, before approval or disapproval of any site plan for a use permitted in such a zone, the commission shall be guided by certain enumerated considerations.[2]

We therefore examine the enumerated considerations set forth in article 10, § A, to ascertain whether any one of the reasons set forth by the commission falls within those considerations. One reason assigned by the commission for the denial was related to traffic and its effect upon the neighborhood. That reason indicated the concern of the commission as to the impact of traffic upon the area and the overburdening of Bushy Hill Road. That reason falls squarely within the pertinent considerations set forth in article 10 of the regulation. Another reason assigned for the denial was based upon the fact that the plaintiff's site plan failed to establish safeguards to protect the neighborhood from the detrimental effects of the shopping center. That also was a proper concern of the commission pursuant to article 10. As already noted, the record reveals that both reasons were amply supported by the evidence printed in the appendices to the briefs.

[2] "Prerequisite to Commission Approval or Disapproval. In considering the proposed project or use the Commission shall be guided by the following: a. The need for the proposed use in the proposed location. b. The existing and future character of the neighborhood in which the use is to be located. c. The location of main and accessory buildings in relation to one another. d. The height and bulk of buildings in relation to other structures in the vicinity. e. Traffic circulation within the site, location, amount and access to parking, traffic load or possible circulation problems on existing streets. f. Availability of water to the site and adequate disposal of sewage and storm water. g. Location and type of display signs and lighting, loading zones and landscaping. h. Safeguards to protect adjacent property and the neighborhood in general from detriment."

Thus, since the last two enumerated reasons were proper considerations directly related to the plaintiff's failure to satisfy the requirements set forth in the zoning regulations, the trial court was correct in concluding that the commission did not act illegally, arbitrarily or in abuse of its discretion.

There is no error.

In this opinion HOUSE, C. J., LONGO and BARBER, Js., concurred.

LOISELLE, J. (dissenting). Although the Simsbury zoning regulations provided for a B-3 zone, a "designed development district" in the nature of a special use district, none was established in the town until 1966, when the subject property was rezoned from residential to B-3. *Furtney* v. *Zoning Commission*, 159 Conn. 585, 598, 271 A.2d 319. The decision to rezone was appealed to this court, and, in the opinion upholding the decision, it was specifically noted that the rezoning was sought in order to build a shopping center. Id., 587. In approving the 1966 zone change, the commission concluded that the change of zone would permit the use of the land for a suitable and appropriate purpose, that it was a safe location, considering traffic, and that *"the shopping center would not pose a traffic hazard."* Id., 600. (Emphasis added.) The commission also pointed out that site approval would be required before a building permit was granted. The shopping center originally proposed was never built. The land changed ownership and the plaintiff, relying on the zone change, sought site approval for construction of a shopping center which differed in some respects from the one originally proposed.

The real issue in this case is whether the subordinate facts which supported the commission's deci-

sion rezoning the property as B-3 in 1966 are proper subjects for redetermination by the commission later when site approval is sought. In B-3 zones the Simsbury zoning regulations permit all the uses permitted in the B-1 and B-2 zones save residences (with an exception for custodians and caretakers), subject to the procedures and requirements contained in special regulations.

The preamble to the special regulations concerning designed development districts states that "the intent of these regulations [is] to permit the development of groups of principal buildings on a single lot or other variance from the specific lot requirement of these regulations only under the strictest control to assure that the intent of these regulations is carried out." As I observe the site plan reproduced in the plaintiff's brief it appears that only *one* building is proposed on *one* lot. It is true that that building contemplates more than one retail outlet, but, as far as the ordinance is concerned, it is only one building on one lot. However that may be, I would not rest my disagreement on that basis.

The special regulations are confusing in that they contemplate one application for both a change of zone and for site approval, and they do not make clear which portions of the regulations apply to the zoning change decision and which to the site approval decision. The heading "Prerequisite to Commission Approval or Disapproval" is ambiguous in this respect. The nature of the matters to be considered under that heading (see note 2 of the majority opinion) indicates that some are to be considered in connection with the zoning decision, and others in connection with the site plan.

The commission gave three reasons for its disapproval of the site plan as stated in the majority opinion. The first reason for disapproval, that no proof of need for the proposed use was established by the applicant, is clearly not applicable to the site plan approval. It would only relate to zone change. At least tacitly, the majority agrees with this, as the opinion does not rely on that ground for affirmance.

The second reason given was as follows: "The neighborhood is clearly residential and the adopted plan of development for Simsbury recommends the maintenance of its residential character. Of the many uses permitted in the B-III zone, a shopping center of the scope proposed with its related traffic activity and after-dark operations, would be the most harmful to the residential character of the neighborhood." This reason would be sufficient if it related to a zone change, but I am not persuaded that it applies to a site plan.

Insofar as a shopping center involves after-dark operations, the decision that such operations were tolerable in that location was made when the property was rezoned in 1966, as was the decision that the residential neighborhood could tolerate an increase in traffic because of such a shopping center. The commission cites no changes in traffic patterns or roads since 1966. Insofar as the site approval decision may take into account traffic problems, it should be concerned with the details of traffic management: number of parking spaces, placement of entrances and exits, and traffic circulation within the site. It is these technical details to which item (e) of the considerations listed as a "Prerequisite to Commission Approval" speaks: "[t]raffic circulation within the site, location, amount and access to parking, traffic load or possible circulation problems

on existing streets." The record is silent as to any circulation problem or congestion on existing streets. The commission's concern for the residential character of the neighborhood is appropriate when there is an application for a change of zone, but not when approval is sought for a site plan for a use already permitted by the ordinance.

The third reason given was "because of the inherent nature of the location and operation of the proposed development, the Commission was unable to establish any safeguards to protect adjacent property or the neighborhood from the detrimental effect of a shopping center." Even though the designed development district should be developed "under the strictest control," once established, as in this case, the district permits business activity as contemplated by the plaintiff, with proper safeguards. The commission did not disapprove the site plan merely because the safeguards proposed by the plaintiff were inadequate. Rather, it disapproved because the commission itself could not establish what it considered to be adequate safeguards. I do not think that this is proper zoning. If the commission could not establish adequate safeguards it should not have changed the zone in 1966. Once the commission has changed the zone it cannot disapprove a site plan for a permitted use because it does not know what to do.

The Simsbury zoning commission has attempted to reverse its 1966 decision rezoning the subject property, without complying with the formalities necessary to change the zoning of the property. This violates principles of both res adjudicata and due process. I would sustain the appeal.