[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I
The present appeal involves a petition submitted by the plaintiff developer, Indian River Associates to the defendant North Branford Planning and Zoning Commission (hereinafter, "the Commission") for the adoption of a new zoning regulation that would allegedly allow the construction of affordable housing[1] in North Branford.
On or about September 20, 1990, the plaintiff, CT Page 4251 through its engineers, Codespoti Associates, filed a proposed amendment entitled "Section 36 — Affordable Housing District AHD Zone" with the Commission. (Return Items 2, 3). The district was in the form of an overlay zone that could be applied any place in town if certain criteria were met. (Return Item 3). The application also sought to change the zone of the plaintiff's 40 acre property on Clintonville Road abutting the Wallingford/North Haven town line presently zoned as I-3 (industrial) and R-40 (residential) to the AHD zone. (Return Item 7). A public hearing was scheduled for November 1, 1990. (Return Items 8, 11).
Joseph Codespoti of Codespoti Associates presented the application on behalf of D'Amato Brothers, the principal owners of Indian River Associates. (Return Item 14, p. 5). He noted that the town had a basic requirement of one acre zoning and that according to statistics prepared by the State Department of Housing, only 2.4% or 111 of North Branford's housing stock of 4650 homes qualified as affordable housing under the state definitions. (Return Items 14, pp. 8-9; 16, p. 6). Additionally, evidence was submitted that within the New Haven/Meriden Metropolitan Statistical Area, the median income was $42,000.00. (Return Item 16, p. 8). Thus, under the definitions of Sections 8-30g(1) and 8-39a, $33,920.00 or 80% of the median income allows $10,170 for housing costs with a maximum purchase price of $110,000.00. (Return Items 14, p. 9; 16, p. 8). He then focused on lot sales in 1989 and 1990 noting that the average price was $90,492.00 for a 1.54 acre lot. (Return Items 14, p. 10; 16, p. 9). He estimated that with a lot cost of $90,000.00, a home would cost approximately $190,000.00 which would require an annual income of $65,000.00 to cover the housing costs. (Return Items 14, p. 10; 16, p. 9). His proposal was to amend the zoning regulations to allow for an overlay zone which would allow the construction of up to 6 homes per acre on any parcel of 20 acres or more served by public water fronting on 4 state roads: North Branford — Clintonville Road, Middletown Avenue, Forest Road and Faxon Road. The proposed amendment also contained certain bulk area requirements including a minimum frontage of 50 feet, a maximum height of 34 feet or 3 stories, a 15 foot set back from the buildings and a green space requirement of 10 per cent. (Return Items 3; 14, pp. 11-14; 16, pp. 10-13). At least 20% of the units would be deed restricted pursuant to General Statutes Section 8-30g(a)(1). The purpose of the proposal, according to the applicant, was to reduce the lot cost to approximately $25,000.00 so that a house could be constructed for a total purchase price of $110,000.00. (Return Item 14, p. 14). He then presented pictures of homes built in other Connecticut communities.
The second part of the application concerned the rezoning CT Page 4252 of the applicant's parcel but Mr. Codespoti was precluded from discussing that application. (Return Items 14, pp. 2-4; 16). In concluding his remarks, he indicated that the applicant was seeking to construct 145-170 homes on the 41 acre parcel and that 20% of them would have a purchase price of approximately $110,000.00. (Return Items 14, p. 17; 16, p. 24).
The chairman read into the record comments made by the Regional Planning Commission on an application in Orange, Connecticut and started to read a letter from the Economic Development Commission, but stopped after indicating the comments were site specific and not applicable to this hearing. He also read a letter from Mildred Bennett and from the fire marshall who was concerned about the ability of the fire department to respond to an emergency due to the setback and parking requirements. (Return Item 14, p. 18).
Mr. Codespoti and members of the Commission discussed the application and specifics of the statutory definition of affordable housing. He indicated that he was willing to work with the Commission and modify the application to meet any requests of the Commission including limiting the area in which the regulations would be applicable. (Return Item 14, pp. 28-31). Commission members also discussed the proposed regulation's impact on wetlands, the ten percent open space provision, the minimum size of the parcel upon which the district would apply and community wells and septic systems. (Return Item 14, pp. 33-38).
The public hearing was then opened up to members of the public. Approximately 18 individuals commented or questioned the application on such areas as the definition of affordable housing, income limitations, deed restrictions, the floating zone concept, density provisions, impact on property value, reduction of land zoned for industrial use, impact on property assessment, impact on education and traffic problems. The chairman then closed the hearing for the evening and continued it until November 15, 1990. (Return Items 14, pp. 38-58; 15).
After notice of the continued hearing (Return Items 17, 18), the hearing convened on said date. Two individuals commented on issues of density, the statutory definition of affordable housing and the loss of industrial zoned land. (Return Item 25, pp. 1-3). The chairman read certain correspondence including a letter from the Regional Planning Commission which stated, inter alia, that the proposed regulation contained no maximum acreage, did not correspond with town development objectives, had minimal requirements for open space, did not consider traffic impacts on Clintonville Road and conflicted with CT Page 4253 town plans for industrial development, including a draft 1990 Land Use Plan. (Return Items 20; 25, p. 4). He also read a letter the North Haven Planning and Zoning Commission which objected to the density as it impacted an R-40 zone in North Haven. (Return Item 25, p. 5). Rick Schultz, the Planning and Zoning Administrator read his memorandum which criticized the proposal on a number of grounds including lack of specific standards, inconsistency with the draft Plan of Development, and its failure to address environmental, traffic, open space and eligibility concerns. (Return Items 25, p. 5; 23). Mr. Schultz also provided the Commission with a list of multiple family dwellings in town. (Return Item 22).
In a discussion with Jeffrey Gordon, representing the plaintiff, Commission members commented on the lack of traffic data and Mr. Gordon indicated that a traffic study was not prepared. (Return Item 25, p. 10). He also addressed the comments of Mr. Schultz noting again that the applicant would be willing to "work with the Commission on essentially any facet." (Return Item 25, pp. 10-16). The chairman noted that 14 letters were received in opposition to the proposed amendment. (Return Items 25, p. 20; 19). The public hearing was closed that evening and the Commission did not substantially address the applications until its January 17, 1991 meeting. (Return Items 39; 41; 42). While no formal minutes of the meeting were included in the record, attached to the denial letter is a memorandum which indicates that by a unanimous vote, the Commission denied the requested amendment for six reasons including, but not limited to, no showing of need, inconsistency with the 1990 Plan of Development (encroachment on land designated industrial), lack of specific safety standards and a dissatisfaction with the minimum deed restrictions. (Return Items 38; 41; 42). Having so defined the initial application to create the affordable housing district, the Commission declared the second application to change the zone of the 40 acre parcel to be moot. (Return Item 41).
On January 28, 1991, the plaintiff filed a proposed modification pursuant to General Statutes Sec. 8-30g(d) responding to the objections or restrictions articulated by the Commission. (Return Item 43). A public hearing was scheduled for March 7, 1991. (Return Items 45; 46; 47; 48). Mr. Gordon presented the proposal noting that this version, now labeled "R-10 Zone" was not a floating or overlay zone, had a density limit of 4.3 units per acre, required the new zone to abut residentially zoned land on two sides, allowed for mixed uses, eliminated the ability to use a community septic system and added a requirement for a traffic study. (Return Item 52, pp. 1-2). The applicant further revised the initial application by requiring a 30 per cent set aside for a 30 year period. (Return CT Page 4254 Item 52, p. 2). After a brief discussion, one member moved, based on a certain memorandum, to deny the proposed modification. The Commission then voted unanimously to deny the submittal for reasons set forth in the memorandum. (Return Items 49, 50, 52).
On March 21, 1991, the applicant took the present appeal challenging both of the Commission's decisions. On December 6, 1991, the court heard the defendant's motion to dismiss denying the motion as to the first application and reserving ruling as to the proposed modification. The case was tried on January 17, 1992.
 II
Discussion
 A.
General Statutes Sec. 8-30g modifies judicial review of land development applications which include a certain percentage of affordable housing. The Commission has, at the outset, sought to dismiss this appeal arguing that the provisions of the Act do not apply as the application seeks legislative action (adoption of a regulation) rather than an administrative action (review of a specific development application such as a site plan, special exception, etc.). This court has recently addressed this issue in TCR New Canaan, Inc. v. Planning Zoning Commission of the Town of Trumbull, No. CV 384353, Judicial District of Hartford/New Britain at Hartford, March 5, 1992 (hereinafter, "TCR"). In that case, this court said that as the statutory language and intent of the legislature was clear, the appeal provisions of the Act applied. This court adopts the rulings set forth in section A 1-6 of that decision.
 B.
1.
Section 8-30g(b) states that "[a]ny person whose affordable housing application is denied or is approved with restrictions which have a substantial adverse impact on the viability of the affordable housing development or the degree of affordability of the affordable dwelling units . . . may appeal such decision pursuant to the procedures of this section." In TCR, supra, this court discussed traditional aggrievement rules finding that they apply as modified by the Act. Thus, the applicant would have to meet the classical aggrievement test. CT Page 4255
 First, the party claiming aggrievement must demonstrate a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must establish that this specific, personal and legal interest has been specially and injuriously affected by the decision. Walls v. Planning Zoning Commission, 176 Conn. 475, 477-78, 408 A.2d 252 (1979).
2.
The Commission argues that the applicant can not fulfill the requirements in the first application because the proposed floating zone has no defined boundaries and therefore does not affect any particular area. Schwartz v. Town Planning Zoning Commission, 168 Conn. 20, 23, 357 A.2d 495 (1975); Sheridan v. Planning Board, 159 Conn. 1, 12, 266 A.2d 396
(1969). In both cases aggrievement was held to be speculative since no application was pending on the applicant's property. The facts in this case are different since part of the overall application included changing the applicant's land to the new affordable housing district. (Return Items 2-8; 16).
In Nick v. Planning and Zoning Commission of East Hampton, 6 Conn. App. 110, 502 A.2d 620 (1986), the Appellate Court held that landowners with property abutting town land on which a zone change allowed the construction of multi-family dwellings with the issuance of a special permit had standing to appeal the zone change prior to the granting of the special permit. The court stated at page 622:
 The essence of the floating zone concept as it applies to a party's right to appeal, that no particular property is affected by the mere establishment of such a zone, is not present here. The amendment of the regulations applies to zones which are already delineated . . . . [The town's land] is the only such parcel currently affected by the amendment which was aimed primarily at that particular parcel. The affected property is in esse and is readily ascertainable.
Inasmuch as the plaintiff is the owner of the property and the application has been denied, this court finds that the plaintiff is aggrieved. "Standing is not a technical rule intended CT Page 4256 to keep the aggrieved parties out of court . . . . Rather it is a practical concept designed to ensure that . . . judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented." Board of Pardons v. Freedom of Information Commission,210 Conn. 646, 648-49, 556 A.2d 1020 (1989).
The proposed modification does not constitute a separate application for aggrievement purposes as it is to be treated "as an amendment to the original proposal." General Stat. Sec. 8-30g(d).
 C.
1.
Generally, a zoning commission acts in its legislative capacity when adopting new regulations or rezoning property. Burnham v. Planning Zoning Commission, 189 Conn. 261,265, 455 A.2d 339 (1983). Thus, "conclusions reached by the Commission must be upheld by the trial court if they are reasonably supported by the record." Id. Where a zoning authority has stated its reasons . . . the reviewing court ought only to determine whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations. First Hartford Realty Corporation v. Plan 
Zoning Commission, 165 Conn. 533, 543, 338 A.2d 490 (1973), citing DeMaria v. Planning Zoning Commission, 159 Conn. 534,540, 271 A.2d 105 (1970). "The action of the commission should be sustained if even one of the stated reasons is sufficient to support it." Goldberg v. Zoning Commission, 173 Conn. 23, 25,376 A.2d 385 (1977). It is not our function to retry the case "and the question is not whether the trial court would have reached the same conclusion but whether the record before the agency supports the decision reached." Calandro v. Zoning Commission, 176 Conn. 439, 440, 408 A.2d 229 (1979).
2.
General Statutes Sec. 8-30g(c) changes the rules.
This section states:
(c) Upon an appeal taken under subsection
 (b) of this section, the burden shall be on the commission to prove, based upon the evidence in the record compiled before such commission that (1) the decision from which CT Page 4257 such appeal is taken and the reasons cited for such decision are supported by sufficient evidence in the record; (2) the decision is necessary to protect substantial public interests in health, safety, or other matters which the commission may legally consider; (3) such public interests clearly outweigh the need for affordable housing; and (4) such public interests cannot be protected by reasonable changes to the affordable housing development. If the commission does not satisfy its burden of proof under this subsection, the court shall wholly or partly revise, modify, remand or reverse the decision from which the appeal was taken in a manner consistent with the evidence in the record before it.
The Legislature has now placed the burden of proof on the commission, and not, as in traditional appeals, on the applicant. Like a traditional appeal, however, the evidence is to be gleaned from the record the new process is not a trial de novo. The commission is required to cite reasons for its decision and the reasons are to be supported by sufficient evidence.
This court again refers to its decision in TCR, sections C. 1-5 for a discussion of the standard of review, sufficient evidence and the collective duty to cite reasons.
3.
 A.
One of the unique aspects of the Act is the ability to file a modified application and upon denial or an approval with substantial adverse impact on the viability or degree of affordability of the development, appeal both decisions. However, this second bite of the appeal requires the court to review both decisions.
1.
The Commission denied the first application on January 17, 1991. Attached to the denial letter was a document entitled "Town of North Branford Memorandum" which might be considered to be the minutes of that meeting as the last two paragraphs discuss the vote of the Commission. The document states the reasons as follows: CT Page 4258
 4.A. The petitioner failed to demonstrate the need in establishing a new zone district overlay permitting up to six units to the acre in all underlying districts as an acceptable zoning technique regulating affordable housing development. The Commission noted for the record existing one districts and regulations capable of addressing the affordable housing issue and is actively investigating additional regulations permitting a wider variety of housing stock in the community.
 B. The proposed text amendment is inconsistent with the adopted 1990 Plan of Development regarding the protection and preservation of premium industrial zoned land from residential encroachment. Town residents objected to the potential loss of tax revenue generated by industrial development.
 C. The proposal failed to provide specific standards and language addressing traffic and environmental impact, architectural diversity, neighborhood compatibility, recreation and open space needs, the impact on the Town's public school system and an eligibility program provision for Town residents and employees. The noted deficiencies are numerous and critical in formulating regulations which protect the public health, safety and general welfare of Town residents. Both the Police and Fire Departments noted these concerns in their respective reports. The Commission also expressed objection on the methods of sanitary waste disposal, specifically on-site treatment. (Section 36.2(d)).
 D. Due to the above noted numerous deficiencies and the proposed density provision, it is the position of the Commission that the general public health interests cannot be protected by attempting to make reasonable modifications to the subject petition.
 E. In a letter dated November 9, 1990 addressed to the North Branford Planning and Zoning Commission, the South Central Regional Council of Governments reported unfavorably on the proposed text amendment. The Executive Committee of the Regional Plan Commission expressed their concern with the proposed "floating" affordable housing district and the inconsistency with the Town Plan of Development regarding multi-family in industrial districts. The Committee also commented on the proposed permitted density level of 6 units per acre and the potential impact on CT Page 4259 the Town's infrastructure as well as the lack of language protecting the overall land use plan.
 F. The Commission also noted that the petitioner chose to provide only the required 20 percent minimum of guaranteed dwelling units containing covenants or restrictions and the minimum allowed set-aside period of 20 years. The Commission suggested the possibility of increasing the 20 percent minimum up to 50 percent and changing the 20 year set aside period to perpetuity. These recommended changes would provide for a more desirable regulation and would alleviate the Town losing any of its affordable housing stock inventory to fair market units.
This court believes that it need only address Reason 4C to resolve this part of the appeal. The Commission raised concerns about the applicant's failure to provide specific standards in the proposed regulations in a number of areas, including traffic, environmental impact, open space, safety and sanitary waste disposal. The proposed regulation does include the statement, at paragraph 36.2(d) that "the parcel must have suitable means for sanitary waste disposal (i.e. community septic system, public sewers, state approved Sewage Treatment Facility)" (sic). (Return Item 3). It also requires the submission of site plan information in conformance with section 62.5.2 of the zoning regulations. (Return Item 51). Finally, it sets forth a 10% open space requirement.
The Commission cannot be faulted for being concerned with a proposed regulation that does not adequately protect the public health, safety and welfare. Adoption of this regulation would mean that all parcels that fall within the geographical boundaries and size limitations of the regulation are deemed suitable for this type of development. In Beit Havurah v. Zoning Board of Appeals, 177 Conn. 440, 443, 418 A.2d 82 (1979) the court stated:
 The designation of a particular use of property as a permitted use establishes a conclusive presumption that such use does not adversely affect the district and precludes further inquiry into its effect on traffic, municipal services, property values, or the general harmony of the district.
In TLC Development Inc. v. Planning and Zoning, Commission, 215 Conn. 527, 577 A.2d 288 (1990), the court affirmed the trial court's reversal of the defendant's denial of a site plan approval based on offsite traffic considerations CT Page 4260 which were not set forth in the zoning regulations. The court stated, referring to Beit Havurah, supra, that "the commission's decision was inconsistent with the fact that the plaintiff's application was for site plan approval of a use that concededly was already fully permitted under the . . . zoning regulations. (Emphasis supplied). Id., 53. The Appellate Court utilized this rule in upholding a trial court's reversal of a Commission decision which denied a subdivision application for traffic congestion reasons. Sowin Associates v. Planning Zoning Commission, 23 Conn. App. 370, 374, 580 A.2d 91 (1990). The court found that because
 [t]he plaintiff's land is located in a residential zone and its plan was to use the property for residential purposes, the commission could not weigh offsite traffic concerns, municipal services required by the development, property values, or the general harmony of the district when deciding whether to approve the plaintiff's subdivision application. Id., 375.
The Sowin court emphasized that a commission acting in its legislative capacity (such as the case herein) can clearly take such offsite traffic considerations into account "in order to develop responsible planning for the present and future development of the community." Id., 375. The court was not reviewing a legislative decision but rather an administrative decision in that case.
In this case, the Commission was presented with an application which it, inter alia, believed to be defective by not providing specific standards or sufficient information. See Treat v. Town Plan Zoning Commission, 145 Conn. 406, 409,185 A.2d 319 (1958). There was, for instance, no traffic study prepared and several individuals from town residents to town officials had traffic safety questions. (Return Items 12; 14; 15; 24; 25; 26). The North Branford Police Department commented that "[t]his traffic (340-400 vehicles per day) along with Fire Lite traffic . . . would greatly create a serious risk in that particular section of Clintonville Road. . . . Again, I would stress that unless something was done to correct the contour of Clintonville Road and improve the site line this is a poor location for this proposal." (Return Item 24). A similar comment was offered by the South Central Regional Council of Governments ("SCRCG"). (Return Items 20; 24; 38(E)).
2.
Reason 4C also raises concerns about environmental CT Page 4261 impact, waste treatment, recreation, and open space needs. At the public hearing, the Commission discussed the proposed regulation's failure to exclude wetlands or other nonbuildable land in the density formula. (Return Items 3; 25, p. 11). Likewise, the Commission was concerned about the 10% open space formula with its stringent definitions and probable likelihood of its only including wetlands. (Return Items 3; 20; 25, p. 11). Similar questions were raised by Mr. Shultz. (Return Item 23) and the SCRCG. (Return Item 20).
3.
This court concludes that all of the above concerns (and the applicant's failure to address them) are supported by sufficient evidence in the record and are necessary to protect substantial public interests in health and safety. While they may be subsequently addressed and may be satisfactorily resolved, they outweigh, at this moment, the need for the development. The Commission has met its burden of proof pursuant to Section 8-30g(c) and the January 17, 1991 denial is upheld.
4.
Reason 4C also notes that the proposal would impact the town's school system. While this court addressed this general issue in TCR, supra, the applicant therein provided an impact study. Such a report was not submitted in this case.
5.
The Commission also denied the application because of its inconsistency with the 1990 Plan of Development in utilizing industrial zoned land for this residential development. In TCR, supra, this court addressed that specific issue because, inter alia, the application was limited to two specific parcels. This application, however, involves land throughout the town fronting on the four major roads. It is an entirely different question which due to the concerns expressed in Reason 4C need not be addressed herein.
6.
Finally, the application was denied because the proposal restricted the affordable units to twenty per cent of the total units and for the twenty year limitation. Such a restriction conforms to the statutory definition of an affordable housing development. General Statutes Sec. 8-30g(1)(B). The Commission requested the affordable percentage be fifty per cent and the set aside period be for perpetuity. This, the Commission stated, would not only provide for a more desirable CT Page 4262 regulation but would also "alleviate the town losing any of its affordable housing stock inventory to fair market units." (Return Item 42).
While this court does not necessarily disagree with either of these reasons, it cannot sanction them. This court does not interpret the statute as allowing a Commission to impose more stringent percentages or set aside periods. If the town believes the Act should have different requirements, it may take that up with the Legislature. An applicant need only propose a project with "not less than" twenty percent of the units for "at least" twenty years. It may chose to set aside more units and for a longer period — but it may not be ordered to as a condition for approval under the Act. An applicant and a town could enter into a contract for a longer period pursuant to Section 3-2g(a) but that provision is not applicable in this case. Reason 4F may not stand.
 B.
1.
On January 18, 1991, the applicant requested the opportunity to meet with the Commission to discuss modifications to the plan. (Return Item 40). On January 28, 1991, the applicant filed its modified application pursuant to General Statutes Sec. 8-30g(d) and a public hearing was scheduled for March 7, 1991. (Return Items 43; 45). The modified application allows an applicant the opportunity to respond to the objections or restrictions articulated by the Commission in the initial application. Presumably, the applicant, notwithstanding the Commission's burden of proof pursuant to Section 8-30g(c)(4), can make a showing that some or all of the objections (public interests) are satisfied. This procedure is akin to the federal test set forth in Huntington Branch NAACP v. Town of Huntington, 844 F.2d 926, 939 (2nd Cir. 1988), aff'd 488 U.S. 15, reh. den. 488 U.S. 1023 (1988) discussed in TCR, supra, section II.C.6.a.
The second application differed from the first in several aspects: (1) it was allegedly no longer a floating zone concept; (2) it applied to parcels 5 acres or larger; (3) the property had to abut residentially zoned property on two sides; (4) the property could no longer use onsite septic disposal; (5) the affordable time limitation was increased to 30 years; (6) the density was decreased; (7) a traffic study would be required for parcels greater than 15 acres; (8) a building limitation of 150 units was imposed on each of the four roads and (9) open space requirements were increased. (Return Item 43). CT Page 4263
2.
The Commission considered the application at the termination of the presentation.[2]
Many of the reasons were similar to those utilized in the first denial. The Commission offered seven reasons and as some will resolve this appeal, this court will not discuss each reason. The seven reasons were listed as follows:
 1. The petitioner failed to demonstrate the need in establishing a new zone district permitting up to 4.3 units to the acre for any parcel of land in the Town of North Branford abutting a residential district on two or more sides having frontage/access on specific streets as an acceptable zoning technique regulating affordable housing developments.
 2. The proposed modified text amendment is inconsistent with the adopted 1991 Plan of Development regarding the protection and preservation of premium industrial zoned land from residential encroachment.
 The Commission is desirous that existing land uses remain balanced. Consequently, non-residential uses that have carried residential land uses in the past should continue to carry them in the future.
 3. The modified amendment failed to provide specific language regulating architectural diversity, neighborhood compatibility and landscaping standards. While several of the issues commented in the Commission's Memorandum dated January 17, 1991 were readdressed, the revised amendment lacked zoning controls which were raised by the Commission and Town residents at the public hearing on November 1, 1990 and December 15, 1990. The lack of the noted regulations will prevent the protection and preservation of natural land features and adjacent properties through the appropriate location of structures.
 4. For the reasons noted in line 3, it is the position of the Commission that the general public health interests cannot be protected by attempting to make reasonable modifications to the subject revised petition.
 5. On March 6, 1991 the Planning and Zoning Department received confirmation from the staff planner, Mr. Richard Stoecker, of the South Central Regional CT Page 4264 Council of Governments that their position, after reviewing the modified amendment, remained the same as reported in their letter dated November 9, 1990.
 6. The modified amendment provides only the required 20 percent minimum of guaranteed dwelling units (without bonus densities) containing covenants or restrictions with a set-aside period of 30 years. The Commission suggested the possibility of increasing the 20 percent minimum up to 50 percent and changing the 30 year set aside period to perpetuity. These recommended changes would provide for a more desirable regulation and would alleviate the Town losing any of its affordable housing stock inventory to fair market units.
 7. The maximum potential number of dwelling units permitted under these proposed regulations can place major demands on schools and other public services.
Reason one is similar to that in the first denial and contains two objections: (1) the issue of need and (2) a disenchantment with the zoning methodology. While this latter reason would suffice under traditional zoning jurisprudence, it is conclusory and does not meet the burden of proof test set forth in Section 8-30g(c).
The Commission's contention that the applicant failed to demonstrate need also does not meet the statutory test. As this court indicated in TCR, supra, II.C.6.b.1., the "plaintiff need not demonstrate a need for these units. The legislature has decided that issue." Unlike that case, however, the Commission herein suggested that North Branford's affordable housing stock was understated by the applicant and the state. The new Plan of Development, adopted between the two decisions on January 21, 1991 (Return Item 52, p. 3) indicates that the Town has a number of units which are in the market sense affordable but which do not qualify under this statutory definition. (Return Item 27, pp. 35-37). This fact was also emphasized by the Commission at the public hearings through the presentation of documents reflecting sales prices of condominiums and statistics on multiple family housing. (Return Items 22; 32). While it is clear to this court that such information may indeed reflect actual market conditions in Connecticut,[3] it is the statutory definition that controls.[4]
Courts are bound to accept legislative definitions. Toll Gate Farms Inc. v. Milk Regulation Board, 148 Conn. 341,347, 170 A.2d 883 (1961). It must be noted that the statutory definition applicable herein is 8-30g(1) which defines affordable CT Page 4265 housing development as "assisted" as defined in subsection three or as "deed restricted" as defined in subsection one. While the deed restricted definition references General Statutes Sec. 8-39a, neither that definition alone[5] nor a market definition totally applies. Thus, the Commissions' argument that there are a number of affordable units, while true, and perhaps negating a need, cannot stand.
3.
The other reasons are also not that different from those offered in the first denial. The record indicates that the Commission was still not satisfied with the standards set forth in the proposed regulation. (Return Item 52, pp. 7-13). The traffic issue, for instance, addressed by the addition of a traffic study requirement at the site plan still left the threshold issue unresolved. TLC Development, supra. While the new plan increased the percentage of open space from 10% to 25%, the modification did not resolve the issue of useable open space.
This court notes that these are "plan specific" objections, Huntington, supra; TCR, supra, but they are not specious objections in this legislative context. This applicant is seeking to create this Residential R-10 District zone which could be placed anywhere in town if the criteria were satisfied.
This is far different from a legislative application for one and only one site. If the applicant has not fully addressed all issues, even after notice, the Commission is certainly not required to approve its proposal. See generally Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525, 553,525 A.2d 940 (1987). These public interests might be protected by changes to the application — but at this point, they have not. The Commission has therefore met its burden under Section8-30g(c)(1)-(4)
Reasons 6 and 7 are similar to reasons set forth in the first denial. This court has addressed those reasons. Having found that the Commission has met its burden, this court need not address the alleged inconsistency with the Plan of Development. "The action of the Commission should be sustained if even one of the reasons is sufficient to support it." Goldberg v. Zoning Commission, 173 Conn. 23, 26, 376 A.2d 385
(1977).
 III
Conclusion CT Page 4266
This court having found that the Commission has sustained its burden of proof under the Act hereby dismisses the appeal.
MARSHALL K. BERGER, JR. JUDGE, SUPERIOR COURT