LORD FAMILY OF WINDSOR, LLC, ET AL. *v.*
PLANNING AND ZONING COMMISSION
OF THE TOWN OF WINDSOR
(SC 17952)

Norcott, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued March 20—officially released September 16, 2008

*Michael A. Zizka,* for the appellants (plaintiffs).

*Richard A. Vassallo,* for the appellee (defendant).

*Opinion*

PALMER, J. The plaintiffs, Lord Family of Windsor, LLC (Lord Family), Robert Daddario and N. Philip Lord, Jr., appeal[1] from the judgment of the trial court denying in part their appeal from the decision of the defendant, the planning and zoning commission of the town of Windsor (commission), to impose certain conditions on the approval of the plaintiffs' subdivision applications pursuant to a zoning regulation requiring a special use permit for the subdivision of more than thirty lots. The plaintiffs claim on appeal that the trial court improperly upheld several of the conditions that the commission had imposed under the regulation. In support of their claim, the plaintiffs contend that (1) the regulation is unlawful because it is not authorized by the enabling statutes, (2) the regulation violates the uniformity requirement of General Statutes § 8-2 (a),[2] and (3) even if the regulation is lawful, two of the conditions that the commission imposed are unlawful because they involve the unlawful delegation of unfettered discretion to the commission's staff members. We conclude that the commission lacked the authority to enact the regulation and, accordingly, reverse in part the judgment of the trial court.[3]

The record reveals the following undisputed facts. Lord Family owns certain property at 355T Prospect Hill Road in the town of Windsor (town). The property does not abut Prospect Hill Road directly but abuts

---

[1] The plaintiffs appealed to the Appellate Court from the judgment of the trial court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] General Statutes § 8-2 (a) provides in relevant part: "All [zoning] regulations shall be uniform for each class or kind of buildings, structures or use of land throughout each district . . . ."

[3] In light of our conclusion that the commission did not have the authority to enact the regulation pursuant to which the challenged conditions were imposed, we need not consider the other claims that the plaintiffs raise on appeal.

existing residential properties located on the road. The property is located in a single-family "AA" residential zone, with a maximum density of occupancy of 1.3 families per acre and a minimum lot area of 27,500 square feet. Windsor Zoning Regs., § 4.1.1. In 2004, Lord Family and Daddario submitted to the commission several related applications pertaining to a proposed subdivision of the property into sixty lots. During hearings on the applications, several members of the commission expressed concern that the property had no street connection to Prospect Hill Road. In response to that concern, Lord Family and Daddario voluntarily withdrew the applications.

Lord Family and Daddario subsequently acquired a strip of land from Lord, an abutting landowner, for the purpose of establishing a road between the proposed subdivision and Prospect Hill Road. Lord Family and Daddario then filed a new set of applications with the commission, including three subdivision applications for three separate portions of the property, an application for a special use permit for a single-family residential development of more than thirty lots pursuant to § 4.5.2 of the Windsor zoning regulations,[4] and an appli-

---

[4] The Windsor zoning regulations provide in relevant part: "4.5 SPECIAL USES

"The following uses may be allowed by the Commission if operating [metropolitan district commission] sewers and water are available to the site . . . and subject to the provisions of Section 2.4 and as hereunder provided. . . .

\* \* \*

"4.5.2 Single-Family Residential Developments with More than 30 Lots

"Proposed single-family residential subdivisions with more than 30 lots, in accordance with the zone requirements and subject to the following conditions:

"A

"The applicant shall demonstrate and the Commission shall find that adequate community facilities, roads, schools, services and utilities exist in the area to adequately serve the proposed development.

"B

"The lots shall comply with applicable standards set forth in relevant sections of this and the Subdivision Regulations. . . ."

Section 2.4 of the Windsor zoning regulations also pertains to special uses.

cation for a special use permit for two "flag lots." The commission approved the special use permit applications subject to twenty-eight conditions and approved the subdivision applications subject to compliance with the special use permit conditions.

Thereafter, the plaintiffs appealed from the commission's decision to the trial court, claiming that six of the conditions improperly were based on special use permit criteria under the Windsor zoning regulations even though the application of zoning law to subdivision applications is not authorized by state law.[5] The plaintiffs further maintained that § 4.5.2 of the Windsor zoning regulations violates the uniformity requirement of

[5] The plaintiffs challenged the following six conditions:

(1) "The applicant and the [applicants'] members and principals shall quit claim all title and rights in Prospect Hill Road to the [t]own . . . by a legal instrument approved by the [t]own [a]ttorney, but only to the extent necessary to create a [fifty]-foot right-of-way for the future improvement of Prospect Hill Road so as to better handle the traffic generated by this subdivision . . . ."

(2) "The plan shall note that lot owners are responsible for spraying of detention ponds and basins for mosquito control . . . ."

(3) "All houses shall be constructed with full basements, central air conditioning and lawn irrigation in order to conform [to] the standards of current development . . . ."

(4) "All houses in the development shall have a habitable floor area of no less than 2700 square feet except for one story houses which may have no less than 2400 square feet of habitable floor area in order to conform to the prevailing standards in the neighborhood . . . ."

(5) "Final [s]taff review and approval of the final architectural drawings and elevations."

(6) "The applicant[s] shall show on the final plans the limits of tree clearing, tree cutting on the site shall be minimized to the greatest extent reasonably practical and accordingly the applicant[s] must mark trees in the field to be removed and then notify the [e]nvironmental [p]lanner who shall approve the tree cutting plan before any removal commences . . . ."

At oral argument before this court, the plaintiffs represented that they did not challenge the other conditions imposed by the commission because they believed that those conditions lawfully could be imposed on the approval of a subdivision application. Those conditions are not at issue in this appeal.

§ 8-2 (a). The trial court concluded that, although the subdivision of land is a planning function, "[t]o the extent that a special permit request for subdivision of a parcel in excess of thirty lots is concerned with the use of the land, the . . . commission was authorized to subject such application to a special permitting process." The court further concluded that the requirement for a special use permit did not violate the uniformity requirement of § 8-2 (a). The court also concluded, however, that the first, third and fourth conditions that the plaintiffs challenged were invalid under applicable zoning law. In light of the court's rejection of the plaintiffs' challenges to the propriety of the second, fifth and sixth conditions imposed by the commission, the court upheld those conditions.

This appeal by the plaintiffs followed.[6] They claim that the trial court improperly upheld the second, fifth and sixth conditions imposed by the commission because, inter alia, the commission was not statutorily authorized to enact § 4.5.2 of the Windsor zoning regulations. We agree with the plaintiffs that the commission lacked the authority to enact a regulation requiring a special use permit to subdivide property into more than thirty lots.[7]

This court previously has recognized that a town's planning and zoning powers are separate and distinct. "[The planning commission's] duty is to prepare and adopt a plan of development for the town based on studies of physical, social, economic and governmental conditions and trends, and the plan should be designed

---

[6] The commission has not appealed from that portion of the trial court's judgment invalidating the first, third and fourth conditions.

[7] We note, preliminarily, that the issue of whether the commission had the statutory authority to require landowners to obtain a special use permit to subdivide land into more than thirty lots is a question of law over which our review is plenary. See, e.g., *Campion* v. *Board of Aldermen*, 278 Conn. 500, 509, 899 A.2d 542 (2006).

to promote the [coordinated] development of the town and the general welfare and prosperity of its people. . . . Such a plan is controlling only as to municipal improvements and the regulation of subdivisions of land." (Citation omitted.) *Purtill* v. *Town Plan & Zoning Commission*, 146 Conn. 570, 572, 153 A.2d 441 (1959). The authority to regulate the subdivision of land is conferred by General Statutes § 8-25,[8] and a planning commission "may only adopt a plan or regulations governing subdivisions of land or impose conditions within the delegated authority." *Sonn* v. *Planning Commission*, 172 Conn. 156, 159, 374 A.2d 159 (1976). In adopting such regulations, the commission is acting in its legislative capacity. Cf. *Arnold Bernhard & Co.* v. *Planning & Zoning Commission*, 194 Conn. 152, 164, 479 A.2d 801 (1984). In applying zoning regulations to "any particular subdivision plan, [however, a planning commission] is acting in an administrative capacity and does not function as a legislative, judicial or quasi-judicial agency . . . ." (Internal quotation marks omitted.) *Pansy Road, LLC* v. *Town Plan & Zoning Commission*, 283 Conn. 369, 375, 926 A.2d 1029 (2007).

"Zoning, on the other hand, is concerned with the use of property. . . . The zoning commission is authorized [by § 8-2 (a)][9] to adopt regulations governing the

---

[8] General Statutes § 8-25 provides in relevant part: "(a) No subdivision of land shall be made until a plan for such subdivision has been approved by the commission. . . . Before exercising the powers granted in this section, the commission shall adopt regulations covering the subdivision of land. . . . Such regulations shall provide that the land to be subdivided shall be of such character that it can be used for building purposes without danger to health or the public safety . . . ."

[9] General Statutes § 8-2 (a) provides in relevant part: "Such zoning commission may divide the municipality into districts of such number, shape and area as may be best suited to carry out the purposes of this chapter; and, within such districts, it may regulate the erection, construction, reconstruction, alteration or use of buildings or structures and the use of land. . . . Such regulations shall be designed to lessen congestion in the streets; to secure safety from fire, panic, flood and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population and to

use of property, and they should be made in accordance with a comprehensive plan for the most appropriate use of land throughout the town." (Citation omitted.) *Purtill* v. *Town Plan & Zoning Commission*, supra, 146 Conn. 572. "The special permit authorization in § 8-2 (a)[10] allows a zoning commission, acting in its legislative capacity, to adopt regulations that allow certain uses within a zone by special permit subject to legislatively prescribed conditions." *Roncari Industries, Inc.* v. *Planning & Zoning Commission*, 281 Conn. 66, 81, 912 A.2d 1008 (2007). When a zoning commission acts in a legislative capacity, its "discretion is much broader than that of an administrative board . . . ." (Internal quotation marks omitted.) *Pansy Road, LLC* v. *Town Plan & Zoning Commission*, supra, 283 Conn. 375. "[T]he courts allow zoning authorities this discretion in determining the public need and the means of meeting it, because the local authority lives close to the circumstances and conditions [that] create the problem and shape the solution." (Internal quotation marks omitted.) *Konigsberg* v. *Board of Aldermen*, 283 Conn. 553, 582, 930 A.2d 1 (2007).

We also have recognized that, although the zoning and planning functions are distinct, they are not entirely unrelated. See *Purtill* v. *Town Plan & Zoning Commission*, supra, 146 Conn. 571–72; see also *Krawski* v. *Planning & Zoning Commission*, 21 Conn. App. 667,

facilitate the adequate provision for transportation, water, sewerage, schools, parks and other public requirements. . . ."

[10] General Statutes § 8-2 (a) provides in relevant part: "[Zoning regulations] may provide that certain classes or kinds of buildings, structures or uses of land are permitted only after obtaining a special permit or special exception from a zoning commission, planning commission, combined planning and zoning commission or zoning board of appeals, whichever commission or board the regulations may, notwithstanding any special act to the contrary, designate, subject to standards set forth in the regulations and to conditions necessary to protect the public health, safety, convenience and property values. . . ."

670, 575 A.2d 1036 ("coordination between the [planning and zoning] functions is desirable and beneficial to the municipality"), cert. denied, 215 Conn. 814, 576 A.2d 543 (1990). For example, zoning commissions are authorized under § 8-2 to regulate lot size and shape; see, e.g., *Lewis* v. *Planning & Zoning Commission,* 76 Conn. App. 280, 285, 818 A.2d 889 (2003) ("the zoning commission has the authority to regulate minimum lot size"); and General Statutes § 8-26[11] expressly forbids a zoning commission from approving any subdivision application that conflicts with such regulations. Cf. *Cristofaro* v. *Burlington,* 217 Conn. 103, 107, 584 A.2d 1168 (1991) (planning commission exceeded its statutory mandate by enacting subdivision regulation requiring larger lot size than zoning regulations required).

In their brief to this court, the plaintiffs claim that "a *planning* commission has no power to require a special permit for approval of a subdivision" because the mere subdivision of land, which is within the province of a planning commission, does not necessarily implicate any particular use of the land, a subject that is within the exclusive domain of a zoning commission. (Emphasis added.) The commission adopted § 4.5.2 of the Windsor zoning regulations, however, not in the exercise of its planning authority, but in the exercise of its *zoning* authority. Moreover, in considering a subdivision application in its planning capacity, the commission is required to enforce applicable zoning regulations, including § 4.5.2. See General Statutes § 8-26. Thus, the commission is required to assume that a landowner who seeks a subdivision approval will use the subdivided property for the permitted purpose. Other-

---

[11] General Statutes § 8-26 provides in relevant part: "The commission shall have the authority to determine whether the existing division of any land constitutes a subdivision or resubdivision under the provisions of this chapter, provided nothing in this section shall be deemed to authorize the commission to approve any such subdivision or resubdivision which conflicts with applicable zoning regulations. . . ."

wise, a landowner who claims that he does not intend to use the land for any particular purpose could subdivide a property into lots of any size and shape. We conclude, therefore, that, properly framed, the issue that the plaintiffs raise in this appeal is whether the commission, acting in its *zoning* capacity, had the statutory authority to enact § 4.5.2 of the Windsor zoning regulations, which requires a special use permit for subdivisions of more than thirty lots.[12] The commission contends that the division of a single parcel of land into more than thirty lots for single-family dwellings is a distinct use of the land and, as such, lawfully may be subject to special permit regulations designed to ensure that the area has access to "adequate community facilities, roads, schools, services and utilities . . . ." Windsor Zoning Regs., § 4.5.2 (A).

We conclude that § 4.5.2 of the Windsor zoning regulations is not a valid regulation of the use of the land. Although the phrase "use of land" as used in § 8-2 (a) is not statutorily defined, it traditionally has been understood to refer to the *type of activity* that is allowed at a particular site, such as residential, educational, religious, industrial, retail or mining. See R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (3d Ed. 2007) §§ 4:11 through 4:28, pp. 84–131. The *density* of a given activity in a particular district also may be controlled by zoning regulations governing lot size, building size, setbacks and the like.[13] Id., § 4:9, p.

---

[12] Accordingly, we conclude that the cases on which the plaintiffs rely concerning the encroachment of planning commissions on the province of zoning commissions are inapposite. See *Cristofaro* v. *Burlington*, supra, 217 Conn. 107; *Lewis* v. *Planning & Zoning Commission*, supra, 76 Conn. App. 286.

[13] General Statutes § 8-2 (a) provides in relevant part: "The zoning commission of each city, town or borough is authorized to regulate, within the limits of such municipality, the height, number of stories and size of buildings and other structures; the percentage of the area of the lot that may be occupied; the size of yards, courts and other open spaces; the density of population and the location and use of buildings, structures and land for trade, industry, residence or other purposes . . . ."

77, and § 4:29, p. 131. The commission, however, has provided no authority, and we have found none, for the proposition that a proposed development that satisfies a district's land use regulations governing the type and density of activity lawfully may be subject to additional regulations as a distinct "use of land" because of its particular *size*.[14]

Indeed, such a conclusion would conflict with the principle that "[t]he designation of a particular use of property as a permitted use establishes a conclusive presumption that such use does not adversely affect the district and precludes further inquiry into its effect on traffic, municipal services, property values, or the general harmony of the district." (Internal quotation marks omitted.) *Pansy Road, LLC* v. *Town Plan & Zoning Commission*, supra, 283 Conn. 376; id. (in considering subdivision application that complies with all zoning regulations, commission cannot consider effect of subdivision on existing traffic congestion on town roads). We recognize that this principle applies only to site plan and subdivision applications involving uses that are permitted as of right, and does not apply to special use permits. *Cambodian Buddhist Society of Connecticut, Inc.* v. *Planning & Zoning Commission*, 285 Conn. 381, 431–32, 941 A.2d 868 (2008). The purpose and effect of § 4.5.2 of the Windsor zoning regulations, however, is to allow the commission to conduct a further inquiry into the effects of a land use that is permitted as of right. We conclude that a planning and zoning commission cannot evade the principle set forth in *Pansy Road, LLC*, in this manner.

Moreover, it is undisputed that, if the plaintiffs' property were comprised of two separate parcels with two

---

[14] The commission contends that § 4.5.2 of the Windsor zoning regulations "is quite clear in that it is not based on the size of the parcel . . . [but, rather] on the proposed 'use' of the land . . . ." The proposed use of a property to establish more than thirty building lots of the required size is *predicated*, however, on the size of the parcel to be subdivided.

separate owners, each of whom submitted an application for a thirty lot subdivision, § 4.5.2 of the Windsor zoning regulations would not apply to their applications. If the applications otherwise complied with the zoning regulations applicable to AA residential zones, the commission would be required to approve them with no further inquiry into the effects of the subdivisions on roads, utilities or municipal services. See, e.g., *Pansy Road, LLC* v. *Town Plan & Zoning Commission*, supra, 283 Conn. 376. It is clear, therefore, that the application of the regulation is predicated on the character of the land's ownership, not on its proposed use. It is well established that the zoning power can be exercised only to regulate land use and is not concerned with ownership. See *Petruzzi* v. *Zoning Board of Appeals*, 176 Conn. 479, 484, 408 A.2d 243 (1979) ("[z]oning is concerned with the use of specific existing buildings and lots, and not primarily with their ownership" [internal quotation marks omitted]); see also *Reid* v. *Zoning Board of Appeals*, 235 Conn. 850, 857, 670 A.2d 1271 (1996) ("zoning power may only be used to regulate the use, not the user of the land" [internal quotation marks omitted]). Accordingly, we conclude that the subdivision of a property into more than thirty residential lots that otherwise comply with applicable zoning regulations is not a distinct "use of land" subject to special permit regulations under § 8-2 (a).

In support of its claim to the contrary, the commission relies on this court's decision in *Goldberg* v. *Zoning Commission*, 173 Conn. 23, 376 A.2d 385 (1977). In *Goldberg*, the defendant zoning commission denied the application of the plaintiff, Jack Goldberg, for a site plan approval of a shopping mall comprised of numerous retail shopping stores. Id., 24. Goldberg appealed to the trial court, which dismissed the appeal. Id. On appeal to this court, Goldberg claimed that the defendant improperly had considered whether there was a

need for the proposed shopping mall when it denied Goldberg's application. Id., 27. We concluded that there was no need to reach that question because the denial was supported by other reasons. Id., 30–31. Specifically, we noted that, although the applicable zoning regulations permitted the construction of a single retail store on a single lot as of right, they permitted "the development of groups of principal buildings on a single lot . . . only under the *strictest control* to assure that the intent of [the] regulations [was] carried out." (Emphasis in original; internal quotation marks omitted.) Id., 29. We stated, in the language relied on by the commission in the present case, that "[a] proposal for a single retail store on a single lot is one thing: a proposal to develop numerous retail stores in one large shopping complex is something else. To claim that there is no difference between the two is to ignore realities." Id., 28. We determined that, under the zoning regulations governing applications for the construction of multiple buildings on one lot, the defendant's concerns about the impact of the shopping mall on traffic and about the detrimental effects of the shopping mall on the neighborhood were valid reasons for denying Goldberg's application. Id., 30–31.

The commission's reliance on *Goldberg* is misplaced. Unlike the proposed use of the property in the present case, the proposed shopping mall in *Goldberg* was not a use permitted as of right under any circumstances. If instead of proposing a shopping mall comprised of multiple retail stores on a single lot, Goldberg had proposed multiple retail stores on separate lots, which *was* a permitted use, our analysis and conclusion might have been very different.

We are mindful of the commission's broad legislative authority to enact zoning regulations to protect the public health, safety and welfare, and its legitimate concerns about the burdens that large residential subdivi-

sions may place on the district and on the town as a whole.[15] We are compelled to conclude, however, that § 4.5.2 of the Windsor zoning regulations is not a valid means of addressing those concerns because it does not constitute a regulation of the "use of land" pursuant to § 8-2 (a). Consequently, the trial court improperly upheld the second, fifth and sixth conditions that the commission imposed in connection with its approval of the plaintiffs' subdivision and special permit applications.

The judgment is reversed in part and the case is remanded with direction to render judgment sustaining the plaintiffs' appeal.

In this opinion the other justices concurred.

---

[15] We note, however, that, with the possible exception of the first condition, which required the applicants to convey a right-of-way for the future improvement of Prospect Hill Road and which was invalidated by the trial court, the conditions that the commission imposed and that the plaintiffs challenged in this appeal were not designed to address the special concerns implicated by a large subdivision. See footnote 5 of this opinion. None of the conditions addressed the impact of the proposed development on the town's ability to provide adequate educational, police, firefighting or other municipal services.