## PANSY ROAD, LLC *v.* TOWN PLAN AND ZONING COMMISSION OF THE TOWN OF FAIRFIELD
### (SC 17713)

Borden, Norcott, Palmer, Vertefeuille and Zarella, Js.

Argued March 14—officially released July 31, 2007

*John F. Fallon*, for the appellant (plaintiff).

*Richard H. Saxl*, for the appellee (defendant).

*Opinion*

VERTEFEUILLE, J. The dispositive issue in this appeal is whether the trial court properly concluded that the defendant, the plan and zoning commission of the town of Fairfield, properly had denied the subdivision application of the plaintiff, Pansy Road, LLC, because of concerns about off-site traffic congestion. The plaintiff appeals from the judgment of the trial court, which dismissed the plaintiff's appeal from the

decision of the defendant denying its subdivision application. We reverse the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. This case arises from the defendant's denial of the plaintiff's application to subdivide certain property located along Pansy Road, a public street in the town of Fairfield. The property is zoned for residential use, and the plaintiff proposed a five lot, residential subdivision. The plaintiff also proposed the construction of a cul-de-sac, to be known as Pansy Circle, which would intersect with Pansy Road. Each of the proposed lots would have direct access to Pansy Circle. Pansy Road is a thirty foot wide, two lane road running north and south, which connects to Stillson Road, state route 135, at its southerly terminus. Land use along Pansy Road includes single-family detached homes and the Osborn Hill Elementary School (school). The driveway of the school is approximately thirty yards away from the proposed intersection of Pansy Road and Pansy Circle.

In August, 2004, the plaintiff submitted an initial subdivision application to the defendant, which held public hearings thereon. The defendant later denied this application, citing the plaintiff's failure to meet certain requirements relating to open space dedication as found in the Fairfield subdivision regulations. After resolving the defendant's open space concerns, the plaintiff again applied to the defendant for approval of a revised subdivision application in February, 2005. At the public hearing held in March, 2005, on the plaintiff's revised subdivision application, numerous residents testified that the proposed subdivision would exacerbate existing traffic and parking problems on Pansy Road, particularly in the vicinity of the school at school drop-off and pick-up times. First Selectman Kenneth Flatto expressed his opposition to the plan, noting in a letter to the defendant that the proposed development would

aggravate existing traffic concerns in the area. Specifically, Flatto stated that the site "was never meant to be accessible for the building of homes or a cul-de-sac" and urged the defendant to approve only two building lots on the plaintiff's property.

At the conclusion of the initial public hearing, the defendant had requested that the plaintiff submit a traffic report and, subsequently, the plaintiff did so.[1] The purpose of the report, which was based on a study completed in November, 2004, by Frederick P. Clark Associates, Inc., a land use consulting firm, was to evaluate the traffic impact of the proposed subdivision. The report acknowledged that traffic congestion existed on Pansy Road that was "directly related to [s]chool activity and typically is limited to a [fifteen] to [twenty] minute period in the morning and mid-afternoon at the beginning of a [s]chool day and at dismissal time."[2] The report concluded, however: "A residential [subdivision such as that proposed by the plaintiff] will most likely generate up to five vehicle trips during a typical peak hour. Adding this level of site traffic to Pansy Road, which typically carries 300 to 350 vehicles during the weekday morning and weekday afternoon peak hours near the site frontage, will have an *insignificant, if any, impact on the overall operation of Pansy Road* or any of the nearby intersections." (Emphasis added.)

The defendant thereafter in April, 2005, voted unanimously to deny the plaintiff's application for its alleged

[1] Section 1.1.12 of the Fairfield subdivision regulations provides: "A traffic study shall be prepared by a licensed Professional Engineer for all applications creating ten or more lots and involving street construction. A traffic study may be required for a lesser number of lots at the discretion of the [plan and zoning commission]. Such report shall address the standards found in Section 2.0 of the Subdivision Regulations, and shall be of such character that it can be used for building purposes without danger to the public safety."

[2] The traffic report recommended that, regardless of whether the plaintiff's subdivision was approved, certain improvements and changes should be made to Pansy Road to mitigate school related traffic.

failure to comply with three subdivision regulations concerning traffic.[3] The plaintiff appealed from the defendant's denial of the subdivision application to the trial court, which affirmed the defendant's decision. The trial court concluded that the defendant properly had considered off-site traffic congestion in denying the plaintiff's application, and that substantial evidence was present in the record to support the defendant's decision. In reaching the first of these conclusions, the trial court determined that *Sowin Associates* v. *Planning & Zoning Commission*, 23 Conn. App. 370, 580 A.2d 91 (1990), cert. denied, 216 Conn. 832, 583 A.2d 131 (1991), on which the plaintiff had relied, had been overruled by this court's decision in *Friedman* v. *Planning & Zoning Commission*, 222 Conn. 262, 608 A.2d 1178 (1992). This appeal followed.[4]

On appeal, the plaintiff's principal claim is that the trial court improperly found that the defendant correctly had considered off-site traffic congestion in denying the subdivision application.[5] Specifically, the

[3] The defendant's stated reasons for denying the subdivision application were the following: "1. Pursuant to [§§] 1.1.12 and 1.1.14 of the [s]ubdivision [r]egulations, it has not been demonstrated that the proposed lots can be used for building purposes without danger to the public safety.

"2. Pursuant to [§] 1.1.14 of the [s]ubdivision [r]egulations, it has not been demonstrated that the proposed street shown on the subdivision plan is in harmony with existing or proposed principal thoroughfares, especially in regard to safe intersections with such thoroughfares.

"3. Pursuant to [§] 2.1.5 of the [s]ubdivision [r]egulations, it has not been demonstrated that the proposed street will provide a safe and convenient system for present and prospective traffic in the area surrounding the proposed subdivision."

[4] The plaintiff filed a petition for certification for review in accordance with General Statutes § 8-8 (o), which was granted by the Appellate Court. The plaintiff then filed its appeal with the Appellate Court, and we subsequently transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[5] The plaintiff also asserts a second ground for reversal, namely, that the trial court improperly concluded that there was sufficient evidence in the record to support the defendant's denial of the plaintiff's application. Because we reverse the trial court's decision on the grounds that it improp-

plaintiff contends that when the defendant reviewed the plaintiff's subdivision application, it was acting in an administrative capacity, and thus was legally bound to approve the subdivision application if it complied with all applicable subdivision regulations. The plaintiff further argues that under *Sowin Associates*, the defendant could not deny the plaintiff's subdivision application because of off-site traffic congestion. The defendant responds that the trial court properly concluded that *Sowin Associates* is no longer good law, and that the defendant therefore properly considered off-site traffic conditions in denying the subdivision application. We disagree that *Sowin Associates* was overruled by *Friedman*, and we agree with the plaintiff that the trial court improperly concluded that the defendant properly had denied the plaintiff's subdivision application because of off-site traffic congestion. We therefore reverse the judgment of the trial court.

We begin with the applicable standard of review. Resolution of the issue before us requires us to determine whether a planning commission has the legal authority to deny a subdivision application because of off-site traffic congestion. This presents a question of law, over which we exercise plenary review. See *Jewett City Savings Bank* v. *Franklin*, 280 Conn. 274, 278, 907 A.2d 67 (2006).

There is no dispute in the present case that, in reviewing the plaintiff's revised subdivision application, the defendant was acting in an administrative capacity. When acting in its administrative capacity, a planning commission "has no discretion or choice but to approve a subdivision if it conforms to the regulations adopted for its guidance."[6] (Internal quotation marks omitted.)

---

erly considered off-site traffic conditions, we need not reach the plaintiff's second claim.

[6] The record in the present case reveals that, apart from the alleged traffic issues, the plaintiff's revised subdivision application complied with the applicable regulations.

*Reed* v. *Planning & Zoning Commission,* 208 Conn. 431, 433, 544 A.2d 1213 (1988). "A municipal planning commission, in exercising its function of approving or disapproving any particular subdivision plan, is acting in an administrative capacity and does not function as a legislative, judicial or quasi-judicial agency . . . ." *Forest Construction Co.* v. *Planning & Zoning Commission,* 155 Conn. 669, 674, 236 A.2d 917 (1967); *Reed* v. *Planning & Zoning Commission,* supra, 433. When acting in its legislative capacity, in contrast, a planning commission's discretion "is much broader than that of an administrative board . . . ." (Internal quotation marks omitted.) *Parks* v. *Planning & Zoning Commission,* 178 Conn. 657, 660, 425 A.2d 100 (1979). When reviewing a site plan application, a planning commission similarly acts in an administrative capacity and may not reject an application that complies with the relevant regulations. See *Kosinski* v. *Lawlor,* 177 Conn. 420, 427, 418 A.2d 66 (1979) ("[o]nce the defendants had determined that the site plan complied with the applicable regulations, the issuance of a certificate of approval became a mere ministerial act").

This court previously has considered the authority of a planning commission, when acting in a limited, administrative capacity, to weigh off-site traffic conditions. In *Reed* v. *Planning & Zoning Commission,* supra, 208 Conn. 433, this court concluded that the inadequacy of an existing town road was not a permissible basis for denying a subdivision application. The plaintiff in *Reed* had filed a subdivision application to subdivide a 33.34 acre parcel into twelve residential building lots. Id., 432. The subdivision site was adjacent to a narrow and partially unpaved public road. Id. The defendant planning and zoning commission had denied the plaintiff's application, noting that the road was "inadequate to provide safe access and egress to the proposed lots for either residents or emergency vehi-

cles." Id. This court affirmed the judgment of the trial court and the Appellate Court, both of which had determined that the defendant had exceeded its authority in denying the plaintiff's subdivision application on the basis of the inadequacy of the existing town road, where the defendant had not found that the application did not conform with its regulations. Id., 438.

In a subsequent, now seminal case, *TLC Development, Inc.* v. *Planning & Zoning Commission*, 215 Conn. 527, 528, 577 A.2d 288 (1990), the plaintiff sought site plan approval for a proposed shopping center on land that was located entirely within a zoning district that permitted such a use. After conducting a public hearing, the defendant planning and zoning commission denied the plaintiff's application, citing concerns about, among other things, "increased traffic on local streets in the vicinity . . . ." Id., 528–29. The trial court thereafter sustained the plaintiff's appeal, concluding that the defendant "lacked the authority to consider offsite traffic impact when determining whether to approve or deny the plaintiff's site plan application." Id., 529. In affirming the trial court's judgment, this court concluded that "the language of the Branford zoning regulations does not permit offsite traffic considerations to serve as the basis for denying a site plan application . . . ." Id. Moreover, this court emphasized that "[t]he designation of a particular use of property as a permitted use establishes a *conclusive presumption* that such use does not adversely affect the district *and precludes further inquiry into its effect on traffic*, municipal services, property values, or the general harmony of the district." (Emphasis added; internal quotation marks omitted.) Id., 532–33.

We now turn to *Sowin Associates* v. *Planning & Zoning Commission*, supra, 23 Conn. App. 370. In that case, an eleven lot subdivision was proposed for land that was residentially zoned. Id., 371–72. At the public

hearing on the plaintiff's application, members of the public expressed concern about traffic congestion on surrounding, off-site streets. Id., 372. The defendant planning and zoning commission thereafter denied the plaintiff's subdivision application, citing " 'traffic congestion and safety concerns . . . .' " Id., 373. The trial court sustained the plaintiff's appeal and concluded that "the application should have been approved because the record did not support the [defendant's] decision and because the proposed site conforms to all of the town subdivision regulations." Id. The Appellate Court granted the defendant's petition for certification to appeal and subsequently affirmed the judgment of the trial court, concluding: "The land in question in the present case was zoned AA-30, and thus designated for residential use. The subdivision plan that was submitted to the [defendant] was for eleven single-family dwellings to be placed on eleven lots that average nearly one acre each. Applying the conclusive presumption set forth in *TLC Development, Inc.* v. *Planning & Zoning Commission*, supra, [215 Conn. 532–33], we must conclude that because the plaintiff's land is located in a residential zone and its plan was to use the property for residential purposes, the [defendant] could not weigh offsite traffic concerns . . . when deciding whether to approve the plaintiff's subdivision application." *Sowin Associates* v. *Planning & Zoning Commission*, supra, 374–75.

The decision in *Sowin Associates* was entirely consistent with the prior precedent of this court as established in *Reed* and *TLC Development, Inc.* Those cases concluded that a planning commission, which acts in an administrative capacity when reviewing a subdivision or site plan application, may not consider off-site traffic congestion as a ground to deny the application. The trial court in the present case, however, concluded that *Sowin Associates* was overruled by this court's decision

in *Friedman* v. *Planning & Zoning Commission*, supra, 222 Conn. 262, and that, under *Friedman*, the defendant properly could consider the impact of off-site traffic in reviewing the plaintiff's subdivision application. We disagree.

In *Friedman*, the defendant planning and zoning commission had denied the plaintiff's application for site plan approval for a three story office building to be located in a commercial zone where the office building was a permitted use. Id., 263. The defendant denied the application because the plaintiff had not submitted a traffic study of the area in question, which was a required submission under the relevant town regulations. Id., 263–64. The issue that this court considered in *Friedman* was "whether the [defendant] could require the submission of an offsite traffic study as part of the site plan approval process." Id., 263. The plaintiff contended that a traffic study would be irrelevant because this court's decision in *TLC Development, Inc.*, and other cases "precluded the [defendant's] consideration of any offsite traffic matters." Id., 264. This court disagreed and upheld the defendant's decision, finding that within the framework of the applicable town zoning regulations, the submission of a traffic study was "an appropriate ancillary submission." Id., 263. The decision in *Friedman* carefully delineates, however, the limited uses to which such a study can be put.

The court in *Friedman* noted the conclusive presumption set forth in *TLC Development, Inc.*, that "once a zoning authority establishes that a particular use within a zone is permitted . . . a *conclusive* presumption arises that such a use in general, does not adversely affect the traffic within the zone." (Emphasis added.) Id., 266. This court next stated that this presumption does not preclude "an examination into the special traffic consequences of a given site plan when the applicable zoning regulations permit it." Id. Such an

examination, cannot, however, address "general matters such as the volume of traffic that might be generated by an office building . . . ." Id., 267. Instead, the examination involves "specific issues such as the placement of entrances and exits in order to disturb arterial traffic minimally and provisions to minimize the impact of traffic on nearby residential areas. It is reasonable to conclude that a . . . regulation dealing with the placement of entrances and exits so as to minimize the disturbance of existing traffic flow could require, as a predicate, a traffic study concerning the existing streets so that both the applicant and the [planning and zoning] commission would know what volumes of traffic were likely to be disturbed by the proposed use." Id. Thus, the consideration of the traffic study in *Friedman* was limited to site-specific issues such as internal traffic circulation within the site and the location of exits and entrances.

This court's conclusion in *Friedman* did not overrule *Sowin Associates,* which is not mentioned anywhere in the *Friedman* opinion. Instead, *Friedman* is consistent with *Sowin Associates* and our prior precedent in recognizing that traffic considerations can play only a limited role in the review of subdivision and site plan applications. The present case presents us with the opportunity to provide additional clarification as to the limitation of that role.

In the present case, as in *Sowin Associates* and *Friedman*, the property at issue is zoned residential, consistent with the use proposed by the plaintiff. We therefore must begin with the conclusive presumption established in *TLC Development, Inc.*, that this proposed use does not adversely affect traffic within the zone, and the defendant therefore cannot deny the application because of existing off-site traffic congestion. "[T]he agency cannot turn down a site plan [or subdivision

application] because of traffic problems on streets adjacent to the property." R. Fuller, 9B Connecticut Practice Series: Land Use Law and Practice (3d Ed. 2007) § 49.14, p. 139. Under *Friedman* and our prior case law, the defendant in the present case properly could have considered the existing traffic problems on Pansy Road only for the limited purpose of reviewing the internal traffic circulation on the site and determining whether the location of the proposed intersection of Pansy Circle with Pansy Road would minimize any negative impact of additional traffic to the existing traffic on Pansy Road. See id., pp. 139–40.

Our careful review of the entire record in the present case reveals that the defendant did not consider the existing traffic congestion on Pansy Road for the proper limited, site-specific purpose of addressing traffic flow within the site and entering and exiting the site. The record reveals no consideration by the defendant of alternate locations for the intersection of Pansy Circle and Pansy Road or other similar, properly limited considerations. Former Judge Robert A. Fuller, in his treatise, states that review in such instances "is limited to defects in the internal circulation of traffic on the site and placement of entrances and exits which affect traffic flow on the adjacent streets." Id., p. 140. The defendant did not undertake such a limited review. Instead, the defendant improperly denied the plaintiff's subdivision application because of the existing traffic congestion on Pansy Road. Accordingly, we conclude that the trial court improperly affirmed the decision of the defendant.

The judgment of the trial court is reversed and the case is remanded to the trial court with direction to render judgment sustaining the plaintiff's appeal.

In this opinion the other justices concurred.