******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# 2772 BPR, LLC *v.* PLANNING & ZONING COMMISSION OF THE TOWN OF NORTH BRANFORD
## (AC 42866)

Prescott, Suarez and Vitale, Js.

*Syllabus*

The plaintiff appealed to the trial court from the decision of the defendant planning and zoning commission denying its application to build a facility to be used for the bulk storage of propane on certain of its real property located in an industrial district. The zoning regulations included as a permitted use the bulk storage of propane in this industrial district. The plaintiff's site development plan application met the required site plan requirements and all applicable zoning regulations. The commission held a public hearing at which town residents testified about their concerns regarding the application, specifically about potential safety hazards in the event of an emergency, the location of the facility at the end of a dead-end street which would potentially limit the ability of emergency services to access the area, and potential diminishing property values as a result of the facility being located near their homes. The commission thereafter denied the plaintiff's application. On appeal, the trial court affirmed the commission's decision, concluding that the commission properly had considered off-site traffic concerns, the preparedness of municipal services in an emergency, and the potential impact of property values when reviewing the plaintiff's site plan development application. The plaintiff, on the granting of certification, appealed to this court. *Held* that the trial court erroneously concluded that the commission properly considered off-site factors when it denied the plaintiff's site development plan application, and such error likely affected the judgment: the commission erred in its decision to deny the plaintiff's application on the basis that it did not adhere to regulations regarding the plan of conservation and development and concerns regarding property values, as the commission had amended its zoning regulations to permit the bulk storage of propane as of right in the industrial district in which the property was located and established a conclusive presumption that such use did not adversely affect the district, and the commission's decision reflected that it would have denied the site development plan application regardless of the plan's contents because it took issue with the use of the property as a place for bulk propane storage, even though the zoning regulations fully permitted that use; moreover, the commission erred in its consideration of traffic concerns because, although the commission was permitted to consider traffic concerns for certain limited, site-specific purposes, the record revealed that the commission's concerns were not limited to the site itself, and improperly encompassed the entire area, the commission did not consider alternatives to the planned entrances and exits to the property to increase emergency access that were presented at the public hearing, and, in amending its regulations to permit the bulk storage of propane, the commission was aware of the street's location and accessibility and considered those factors when making its decision to amend its regulations; accordingly, the judgment was reversed and the case was remanded with direction to the commission to approve the plaintiff's site development plan application.

Argued March 3—officially released September 14, 2021

*Procedural History*

Appeal from the decision of the defendant denying the plaintiff's application for site plan approval for certain of its real property, brought to the Superior Court in the judicial district of New Haven and tried to the court, *S. Richards, J.*; judgment denying the appeal, from which the plaintiff, on the granting of certification, appealed to this court. *Reversed; judgment directed.*

*Jeffrey T. Beatty*, with whom, on the brief, was *Megan C. Granfield*, for the appellant (plaintiff).

*Barbara M. Schellenberg*, for the appellee (defendant).

*Opinion*

SUAREZ, J. The plaintiff, 2772 BPR, LLC, appeals from the judgment of the trial court denying its appeal from the decision of the defendant, the Planning & Zoning Commission of the Town of North Branford (commission), in which the commission denied the plaintiff's site development plan application to build a facility to be used for the bulk storage of propane. On appeal, the plaintiff claims that the court erred by (1) upholding the commission's consideration of off-site traffic concerns, the preparedness of municipal services, and the potential impact on property values when conducting an administrative review of its site development plan application, and (2) raising independently a reason to deny the appeal that was not one of the bases for the commission's decision to deny the application. We agree with the plaintiff's first claim, and, accordingly, reverse the judgment of the trial court and remand the case with direction to render judgment sustaining the plaintiff's appeal and directing the commission to approve the plaintiff's site development plan application.[1]

The record reveals the following undisputed facts and procedural history relevant to the plaintiff's claims on appeal. The plaintiff is the contract purchaser of a parcel of land at 40 Ciro Road in North Branford (property). The property is located in an I-2 industrial district. See North Branford Zoning Regs., c. 232, art. II, § 21.1. On August 7, 2014, the commission amended the town's zoning regulations to include as a permitted use in that district the "[b]ulk storage of propane on parcels of land south of Route 80, east of Ciro Road and bounded on all sides at the time of application by similarly zoned properties." North Branford Zoning Regs., District—Map Code, Schedule A, Line C-23, p. 7. This use was coded as "S," which, pursuant to the zoning regulations, "means a use permitted in the district as a matter of right, subject to administrative approval of a site development plan by the [c]ommission in accordance with § 41 [of the zoning regulations]. . . ." North Branford Zoning Regs., c. 232, art. II, § 23.1. The amended regulations became effective on September 5, 2014. On that date, the plaintiff submitted a site development plan application to the commission in which it sought approval to construct on the property two 30,000 gallon propane storage tanks, a garage, a connector building, an office building, and canopies.[2] On October 2, 2014, the commission held a public hearing on the plaintiff's application. After hearing testimony from the plaintiff, the commission set aside the application pending review of the inland wetlands portion of the application. On January 17, 2017, with regard to the wetlands matter, the Department of Energy & Environmental Protection issued a final decision in favor of the plaintiff, which allowed it to proceed with

its application before the commission. The commission continued the public hearing on the site development plan application on March 2, March 9, and March 16, 2017. During this period, on March 8, 2017, the plaintiff revised the site development plan.

The commission was provided with, among other documents, an "application referral notification" dated February 16, 2017, which was sent from Carey Duques, the town planner, to the heads of various town agencies and commissions. The document provided details about the application and its status before the commission. At the bottom of the document was a section titled "review comments," under which a handwritten comment dated February 27, 2017, stated that the application "meets required site plan requirements & all applicable zoning regulations."

Throughout the public hearing, the commission heard public comment from town residents who opposed the plan. These residents expressed concern about the potential safety hazards posed by a bulk propane storage facility in the event of an emergency, such as a leak, fire, or natural disaster. Residents pointed to the fact that the property is located at the end of a dead-end street, which would limit the ability of emergency services to respond to an incident there. Additionally, residents who lived near the property testified that they believed their property values would decrease if a propane storage facility was located near their homes.

Members of the commission also questioned the plaintiff and its representatives about their concerns, including accessibility to the site in the event of any emergency.[3] At the March 16, 2017 meeting,[4] Duques read into the record her correspondences with town officials regarding questions raised at the March 9, 2017 meeting. Among these correspondences was a letter from Lieutenant James Lovelace of the North Branford Police Department, which stated: "The existing . . . traffic on Ciro Road has not impacted North Branford Police when responding to any emergency incident. We have responded to businesses on Ciro Road for many different types of emergencies and have not had any difficulty responding to incidents during the day or night; therefore, I do not feel that we would have any difficulty responding to any type of incident on 40 Ciro Road. . . . In researching our records, I have only located two parking complaints dating back to 2007. These parking complaints involved trailers up at the dead end of Ciro Road. If a parking issue needs to be addressed in front of these businesses, then that matter can be brought in front of the North Branford Police Commission to be investigated. We have not received any complaints in regards to any entrance issues at Ciro Road and Crossfield Road." Additionally, an e-mail from James Buck, the town's Emergency Management Director, provided an assessment of how evacuations would

be conducted in the event of an incident. A portion of the e-mail stated: "Individuals located on Ciro Road and south of 40 Ciro Road currently have no direct roadway evacuation route available that does not pass near the incident location. Finding a way to utilize the town-owned land at the end of Ciro Road to provide safe access away from Ciro Road would be advisable."

On March 16, 2017, the commission voted three to two to deny the plaintiff's application. The commission, citing § 41.2 of the North Branford Zoning Regulations,[5] stated in a written "final motion" that the site development plan did not meet the following criteria: (1) "The site plan is not in conformance with the [p]lan of [c]on-servation and [d]evelopment"; (2) "Neighborhood, the proposed project is unable to protect property values of the neighborhood"; and (3) "Access, Ciro Road is a [dead-end] street which limits access both in and out of the area during an emergency . . . ." On March 30, 2017, notice of the commission's decision was pub-lished in The Sound.[6]

On April 10, 2017, the plaintiff, pursuant to General Statutes § 8-8 (b), timely appealed the denial of the site development plan application to the Superior Court. The plaintiff claimed that the commission acted "arbi-trarily, illegally, in an abuse of discretion and unlaw-fully" when it denied the site development plan applica-tion for the reasons stated in its written motion. In its brief to the court, the plaintiff stated: "Because the proposed use was permitted as of right, concerns about conformance with the plan of conservation and devel-opment, property values and access were conclusively presumed to have been considered at the time of the applicable zoning regulations permitting the proposed use were adopted by the commission. As a result, the commission was precluded from basing its decision upon the reasons it gave for its decision." The plaintiff further stated: "Even if the law provided otherwise, the record before the commission at the time it rendered its decision does not support its conclusion."

In response, the commission, in its brief, relied on *Friedman* v. *Planning & Zoning Commission*, 222 Conn. 262, 608 A.2d 1178 (1992), which the commission contended "stands for the proposition that [the] desig-nation of a use as permitted does not preclude inquiry into specific matters set forth in applicable [zoning] regulations." According to the commission, it "properly applied the . . . zoning regulations . . . to determine that the plaintiff's application must be denied because it failed to comply with the regulations," and that "the record amply support[ed] the reasons cited by the com-mission in support of its denial."

Following an August 20, 2018 hearing, the court denied the plaintiff's appeal, concluding that the commission properly denied the plaintiff's application. In its memo-randum of decision dated December 18, 2018, the court

stated that it "agree[d] with the [commission's] interpretation of the *Friedman* holding in addition to its understanding of the fact that its regulation[s] require such an undertaking, under the circumstances presented here, in this case." The court went on to state: "The court, in examining the entire return of record, disagrees with the plaintiff's contention that it does not support the commission's decision. The record shows that the subject property is located on a dead-end street with traffic that flows in one direction either way. It further indicates that the volunteer fire department lacked adequate preparedness capabilities in the event of an emergency in order to evacuate residents of Ciro Road and that there was testimony by lay members of the public who testified about their concerns regarding the potential impact such use of the property would have on the property values. The court is not persuaded that the law requires an expert witness to present an opinion as [to] valuation under these facts as there was no specialized knowledge or training necessary to opine about the potential impact the potential use of the subject property would have on property values."

Subsequently, the plaintiff filed a petition for certification to appeal pursuant to § 8-8 (o) and Practice Book § 81-1, which this court granted. Additional facts and procedural history will be set forth as necessary.

The plaintiff claims that the court erred by upholding the commission's consideration of off-site traffic concerns, the preparedness of municipal services, and the potential impact on property values when conducting an administrative review of its site development plan application.[7] Specifically, the plaintiff argues that the court misinterpreted *Friedman* in concluding that the case allowed the commission to consider off-site factors when reviewing the site development plan application. The commission argues, as it did before the court below, that *Friedman* controls the present case, and reiterates that "*Friedman* stands for the proposition that [the] designation of a use as permitted does not preclude inquiry into specific matters set forth in applicable [zoning] regulations." We agree with the plaintiff.

We begin by setting forth the standard of review. We view the plaintiff's claim as one challenging a legal conclusion of the court. "When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Villages, LLC* v. *Planning & Zoning Commission*, 149 Conn. App. 448, 456, 89 A.3d 405 (2014), appeal dismissed, 320 Conn. 89, 127 A.3d 998 (2015).

General Statutes § 8-3 (g) (1) provides in relevant part: "The zoning regulations may require that a site plan be filed with the commission . . . to aid in determining the conformity of a proposed building, use

or structure with specific provisions of such regulations. . . . A site plan may be modified or denied only if it fails to comply with requirements already set forth in the zoning . . . regulations. . . ."

When reviewing a site development plan application for a use permitted as of right in a particular zone, "a planning commission . . . acts in an administrative capacity and may not reject an application that complies with the relevant regulations." *Pansy Road, LLC* v. *Town Plan & Zoning Commission*, 283 Conn. 369, 375, 926 A.2d 1029 (2007) (*Pansy Road*). In other words, "[w]hen [a planning commission] undertakes consideration of a site plan application, it has no independent discretion beyond determining whether the plan complies with the site plan regulations and applicable zoning regulations incorporated into the site plan regulations by reference." *Borden* v. *Planning & Zoning Commission*, 58 Conn. App. 399, 408, 755 A.2d 224, cert. denied, 254 Conn. 921, 759 A.2d 1023 (2000).

Before examining the applicability of the holding in *Friedman* to the present case, it is first necessary to discuss two cases that came before it. In *Beit Havurah* v. *Zoning Board of Appeals*, 177 Conn. 440, 443, 418 A.2d 82 (1979), our Supreme Court stated that "[t]he designation of a particular use of property as a permitted use establishes a *conclusive presumption* that such use does not adversely affect the district and precludes further inquiry into its effect on traffic, municipal services, property values, or the general harmony of the district." (Emphasis added.) This principle was reaffirmed in *TLC Development, Inc.* v. *Planning & Zoning Commission*, 215 Conn. 527, 577 A.2d 288 (1990) (*TLC*). In *TLC*, a plaintiff sought site plan approval for a shopping center in a zone in which such use was permitted as of right. Id., 528. After a public hearing, the defendant planning and zoning commission denied the application, citing concerns about, among other things, "increased traffic on Route 1" and "increased traffic on local streets in the vicinity . . . ." Id., 528–29. The trial court sustained the plaintiff's appeal challenging that denial, concluding that the defendant "lacked the authority to consider [off-site] traffic impact when determining whether to approve or deny the plaintiff's site plan application." Id., 529. Our Supreme Court affirmed the trial court's judgment, stating that "the language of the Branford zoning regulations [did] not permit [off-site] traffic considerations to serve as the basis for denying a site plan application . . . ."[8] Id. In addition to examining the town's zoning regulations, the court relied on the conclusive presumption set forth in *Beit Havurah*. Id., 532–33. The court stated that "the commission's decision was inconsistent with the fact that the plaintiff's application was for site plan approval of a use that concededly was already *fully permitted* under the Branford zoning regulations." (Emphasis added.) Id., 532.

In *Friedman*, our Supreme Court addressed its holdings in *Beit Havurah* and *TLC* and clarified when a planning and zoning commission is permitted to consider the traffic consequences of a proposed use that is permitted as of right. In that case, the plaintiffs applied for approval of a site plan to construct a three-story office building in Rocky Hill. *Friedman* v. *Planning & Zoning Commission*, supra, 222 Conn. 263. The property was located within a commercial zone; id., 263; in which an office building was a permitted use " 'subject to [s]ite [p]lan [a]pproval in accordance with [§] 9.4 [of the Rocky Hill Zoning Regulations].' " Id., 266. Section 9.46 of the zoning regulations was entitled " 'Criteria for Approval,' " and " 'specifically require[d] a traffic study addressing the impact of the proposed development upon the street system in the area.' " (Emphasis omitted.) Id. The defendant planning and zoning commission denied the application for failing to comply with a number of applicable zoning regulations, and the plaintiffs appealed to the Superior Court. Id., 263–64. The court dismissed the appeal, "concluding that the plaintiffs' application had been incomplete in that it had not been accompanied by an appropriate, required traffic study." Id., 264.

On appeal to our Supreme Court, the plaintiffs claimed that the court "erred in concluding that the commission could even consider [off-site] traffic issues in determining their site plan application. Specifically, the plaintiffs argue[d] that since an office building was a permitted use in the zone in question, [the] holdings in *TLC* . . . and *Beit Havurah* . . . precluded the commission's consideration of *any* [off-site] traffic matters." (Emphasis added.) Id. Our Supreme Court disagreed, stating that neither *TLC* nor *Beit Havurah* "[preclude] an examination into the special traffic consequences of a given site plan *when the applicable zoning regulations permit it*." (Emphasis added.) Id., 266. The court stated that "§ 9.46 [of the Rocky Hill Zoning Regulations] [did] not deal with general matters such as the volume of traffic that might be generated by an office building, but rather with specific issues such as the placement of entrances and exits in order to disturb arterial traffic minimally and provisions to minimize the impact of traffic on nearby residential areas. It is reasonable to conclude that a commission regulation dealing with the placement of entrances and exits so as to minimize the disturbance of existing traffic flow could require, as a predicate, a traffic study concerning the existing streets so that both the applicant and the commission would know what volumes of traffic were likely to be disturbed by the proposed use." Id., 267. Accordingly, the plaintiffs' failure to supply a traffic study provided "an adequate legal basis" for the planning and zoning commission's decision to deny the application. Id., 268.

We note that *Friedman* did not purport to overrule *Beit Havurah* or *TLC*. Former Judge Robert A. Fuller, in his treatise, reconciles the holdings of *TLC* and *Friedman*. Citing to *TLC*, he states that a planning and zoning commission "cannot turn down a site plan because of traffic problems on streets adjacent to the property." R. Fuller, 9B Connecticut Practice Series: Land Use Law and Practice (4th Ed. 2015) § 49.18, pp. 153–54. He goes on to note: "There is a difference between considering the special traffic consequences of development under a particular site plan when the applicable zoning regulations permit it, to be certain that the location of exits and entrances to the property do not adversely affect traffic flow, in contrast with attempting to deny a permitted use because of existing off-site traffic volumes and patterns. The *Friedman* case should not be construed as overruling *TLC* . . . by implication or as adopting a different standard on this issue and can be considered on its facts to be limited to the proposition that a zoning commission can require a traffic study to make sure that the proposed exits and entrances to the property are safe." (Footnote omitted.) Id., pp. 154–55.

More recently, in *Pansy Road*, our Supreme Court reaffirmed the principle set forth in *Friedman* that when a landowner has submitted an application for a permitted use, the planning and zoning commission may consider off-site traffic conditions "only for the limited purpose of reviewing the internal traffic circulation on the site and determining whether the location of the proposed [roads and driveways] would minimize any negative impact of additional traffic to the existing traffic . . . ." *Pansy Road, LLC* v. *Town Plan & Zoning Commission*, supra, 283 Conn. 380; see also *American Institute for Neuro-Integrative Development, Inc.* v. *Town Plan & Zoning Commission*, 189 Conn. App. 332, 342, 207 A.3d 1053 (2019). In *Pansy Road*, a developer proposed to subdivide land on Pansy Road, a public street in Fairfield, into five lots, and to construct a single-family home on each lot. *Pansy Road, LLC v. Town Plan & Zoning Commission*, supra, 371. The developer planned to build a cul-de-sac named Pansy Circle, to which each lot would have direct access, which would intersect with Pansy Road. Id. The town's planning and zoning commission, citing concerns about existing off-site traffic congestion on Pansy Road, voted unanimously to deny the application. Id., 372–73. The plaintiff appealed the denial of its application, and the trial court dismissed the appeal. Id., 370–71. Our Supreme Court reversed the trial court's decision and concluded that the town's planning and zoning commission "did not consider the existing traffic congestion on Pansy Road for the proper limited, site-specific purpose of addressing traffic flow within the site and entering and exiting the site." Id., 380. The court further stated that "[t]he record reveals no consideration by the defendant of alternate locations for the intersection

of Pansy Circle and Pansy Road or other similar, properly limited considerations." Id. In reaching that conclusion, our Supreme Court also quoted from Fuller's treatise for its analysis of *Friedman*. Id.; see R. Fuller, 9B Connecticut Practice Series: Land Use Law and Practice (3d Ed. 2007) § 49.14, p. 140.

Turning to the present case, the commission, in reviewing the site development plan application, was acting in an administrative capacity that limited its discretion such that it properly could determine only whether the plan complied with the applicable site plan and zoning regulations. The commission stated three grounds for denying the plaintiff's site development plan application. We first address the commission's conclusions that "[t]he site plan [was] not in conformance with the [p]lan of [c]onservation and [d]evelopment," and that "the proposed plan is unable to protect property values of the neighborhood . . . ." In reaching these two conclusions, the commission relied on §§ 41.2.1 and 41.2.2 of the North Branford Zoning Regulations, which address the plan of conservation and development and concerns about property values, respectively. Section 41.2.1 provides in relevant part: "The site development plan shall be in conformance with the purpose and intent of any plan of development . . . adopted by the [c]ommission and pertaining to the area in which the use is to be located, particularly in regard to but not limited to . . . the provision of streets . . . the setback, bulk and appearance of buildings and other structures; and . . . the provision and location of landscaping features."[9] North Branford Zoning Regs., c. 232, art. IV, § 41.2.1. Section 41.2.2 provides: "The use of land, buildings, and other structures, the location and bulk of buildings and other structures and the development of the lot shall be of a character as to harmonize with the neighborhood, to accomplish a transition in character between areas of unlike character, to protect property values and to preserve and enhance the appearance and beauty of the community." North Branford Zoning Regs., c. 232, art. IV, § 41.2.2.

We reject the commission's argument that *Friedman* permitted it to rely on these criteria to deny the plaintiff's application merely because these criteria are included in the applicable zoning regulations. A conclusive presumption is one "that cannot be overcome by any additional evidence or argument because it is accepted as irrefutable proof that establishes a fact beyond dispute." Black's Law Dictionary (11th Ed. 2019) p. 1435. The conclusive presumption first set forth in *Beit Havurah* lists traffic, municipal services, property values, and the general harmony of the district as categories into which zoning commissions are not permitted to inquire once the commission has permitted a particular use as of right. *Beit Havurah* v. *Zoning Board of Appeals*, supra, 177 Conn. 443.

As we previously have noted, approximately one month prior to the plaintiff's submission of its site development plan application, the commission amended the zoning regulations to permit the bulk storage of propane as of right in the I-2 industrial district in which the property is located. Doing so established a conclusive presumption that this use did not adversely affect the district. In making its decision, the commission presumably had determined that the use was in conformance with the plan of conservation and development and would not negatively impact property values. Otherwise, it would not have included such a specific use in the regulations.

The holding in *Friedman* is limited to site specific concerns that are related to a permitted use. Under *Friedman*, the commission properly could consider, for example, the placement and location of buildings on the property in order to minimize adverse effects on property values. The commission's decision, however, reflects that it would have denied the site development plan application regardless of the plan's contents because it took issue with *the use* of the property as a place for bulk propane storage, even though the zoning regulations fully permitted that use. Accordingly, §§ 41.2.1 and 41.2.2 of the North Branford Zoning Regulations could not serve as bases for denying the plaintiff's site development plan application.

We next address the commission's decision to consider emergency access to the area in rejecting the site development plan application. The commission cited § 41.2.3 of the North Branford Zoning Regulations in concluding that "Ciro Road is a [dead-end] street which limits access both in and out of the area during an emergency . . . ." Section 41.2.3 is entitled "Access," and provides in relevant part: "Provision shall be made for vehicular access to the lot in such a manner as to safeguard against hazards to traffic and pedestrians in the street and on the lot and to avoid traffic congestion on any street. . . ." North Branford Zoning Regs., c. 232, art. IV, § 41.2.3. This section goes on to list criteria with which a site development plan must comply.[10]

Although the conclusive presumption established in *Beit Havurah* was triggered when the commission permitted this use as of right, the commission was permitted to consider traffic concerns for the limited, site-specific purposes set forth in *Friedman* and its progeny. Our review of the record reveals that the commission's traffic concerns were not limited to the site itself, but rather encompassed the entire area.

We first note that the present case is distinguishable from *Friedman*. Unlike in *Friedman*, there is no indication that the plaintiff's application was incomplete or that the applicable zoning regulations required the plaintiff to submit a traffic study. Rather, as Duques stated in her February 16, 2017 memorandum, the appli-

cation "[met] required site plan requirements & all applicable zoning regulations." Furthermore, in *Friedman*, the commission only considered internal traffic on the property and the means of ingress to and egress from the property onto the public road. *Friedman* v. *Planning & Zoning Commission*, supra, 222 Conn. 267–68. In contrast, in the present case, the commission considered access in and out of the *area* of Ciro Road, which is broader than the site itself. In other words, the commission considered traffic on Ciro Road as a whole and access to the entire street, as well as in neighboring areas. Thus, the commission's concerns were not site specific, and, instead, presumably also applied to other properties on Ciro Road. Cf. *Pansy Road, LLC* v. *Town Plan & Zoning Commission*, supra, 283 Conn. 379 ("the consideration of the traffic study in *Friedman* was limited to site-specific issues such as internal traffic circulation within the site and the location of exits and entrances").

Furthermore, as in *Pansy Road, LLC* v. *Town Plan & Zoning Commission*, supra, 283 Conn. 380, the record in the present case reveals that the commission did not consider alternatives to the planned entrances and exits to the property. For example, there was evidence presented that town owned land is located at the end of Ciro Road, and it was suggested that there might exist a way to utilize this land to provide safe access for evacuations in the event of an emergency. The commission did not inquire as to this possibility.

The commission's concern about the dead-end nature of Ciro Road as a whole belies its prior decision to amend its zoning regulations to permit the bulk storage of propane as of right on *every* property on Ciro Road that is located within the I-2 industrial district. The commission likely would have had similar concerns about emergency accessibility if, for example, the application pertained to a neighboring property on Ciro Road. Yet, § 23.1 of the North Branford Zoning Regulations, which the commission amended to permit this use as of right, *specifically* refers to Ciro Road as a means of specifying where in the I-2 district this use would be permitted. This fact suggests that the commission was aware of the street's location and accessibility when it amended the zoning regulations, and considered these factors when making its decision. The commission could not then walk back this decision once it received an application to use a property on Ciro Road in this manner.

Accordingly, we conclude that the court erred in its application of *Friedman*, and erroneously concluded that the commission properly considered off-site factors when it denied the plaintiff's site development plan application. The plaintiff has demonstrated that the error likely affected the judgment. We conclude that the proper remedy is to remand the case to the trial

court with direction to render judgment sustaining the plaintiff's appeal and directing the commission to approve the plaintiff's site plan application.

The judgment is reversed and the case is remanded with direction to render judgment sustaining the plaintiff's appeal and directing the commission to approve the plaintiff's site development plan application.

In this opinion the other judges concurred.

[1] We do not reach the merits of the plaintiff's second claim because our conclusion with respect to its first claim is dispositive of the appeal. We note, however, that even if we were to reach the merits of this claim, the plaintiff readily would prevail.

In its memorandum of decision dismissing the plaintiff's appeal, the court concluded, among other things, that the record contained substantial evidence that "the volunteer fire department lacked adequate preparedness capabilities in the event of an emergency in order to evacuate residents of Ciro Road . . . ." As we discuss in more detail later in this opinion, the commission stated three written grounds for denying the plaintiff's application. None of those grounds can reasonably be interpreted as implicating the "preparedness capabilities" of the fire department. The court, in opining on the preparedness of the fire department, improperly looked beyond the three written bases for the commission's decision. See *American Institute for Neuro-Integrative Development, Inc.* v. *Town Plan & Zoning Commission*, 189 Conn. App. 332, 336–37, 207 A.3d 1053 (2019) ("Where a zoning agency has stated its reasons for its actions, the court should determine *only* whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations. . . . The principle that a court should confine its review to the reasons given by a zoning agency . . . applies where the agency has rendered a formal, official, collective statement of reasons for its action." (Emphasis added; internal quotation marks omitted.)).

[2] The plaintiff also included in the site development plan application a proposal to make site improvements associated with the proposed construction.

[3] At the March 9, 2017 meeting, the following colloquy occurred between Commissioner Frances Lescovich and Robert Sonnichsen, the plaintiff's engineer:

"[Lescovich]: Oh. The other thing was on the site plan, the question came up and that would be for the architect. There's one . . . entrance and exit on Ciro Road, right?

"[Sonnichsen]: That's correct.

"[Lescovich]: Okay, so if Ciro Road has such a backup . . . where Cherry Hill is and a lot of the other companies and we don't have any other way of in and out, how would you suggest that this is safe?

"[Sonnichsen]: We've taken a look at the—one of the questions, and I know I'm not supposed to be answering the questions, but one of the questions that came up had to do with why there was not a traffic study done as part of our application, and we took a look at it, and I do have a response for that in my letter, and it was provided to us by our traffic consultant.

"[Lescovich]: But this is above a traffic study. This was the congestion on the road that the emergency facilities would have to get in and out of, and if the roads are so congested, how are they supposed to get in or out?

"[Sonnichsen]: Which road are you talking? On Ciro Road?

"[Lescovich]: Right.

"[Sonnichsen]: Ciro Road has a travel way that is approximately forty feet wide. That's [a] very wide industrial road. And normal driveways are around the area of twenty-four feet. So it has a substantial amount of area along the sides, which should still leave adequate travel way down the middle. You could have cars or trucks parked on either side of the road, and you still would be able to get up and down Ciro Road."

[4] We use the term "meeting" to refer to the public meetings that took place before the commission, spanning from when the plaintiff submitted the site development plan application to when the commission denied the application. The meetings were open to the public and the commission heard public comment. Together, the meetings comprise a single "public hearing" on the application.

[5] Section 41.2 of the North Branford Zoning Regulations provides general standards that "apply to all uses subject to approval of a site development plan by the [c]ommission . . . ."

[6] In its application to appeal the commission's decision to the Superior Court, the plaintiff alleged that The Sound is "a newspaper having circulation in . . . North Branford . . . ."

[7] As previously stated, the commission listed as a ground for denying the application that "[t]he site plan is not in conformance with the [p]lan of [c]onservation and [d]evelopment . . . ." Accordingly, we interpret the plaintiff's claim as challenging that ground as well.

[8] Branford's zoning regulations contained a section entitled "Site Plan Standards," which provided that the defendant "may require such modifications of the proposed plans as it deems necessary . . . to assure the accomplishment" of certain "general objectives" such as traffic circulation. (Internal quotation marks omitted.) *TLC Development, Inc.* v. *Planning & Zoning Commission*, supra, 215 Conn. 530. The text of this section "[made] it clear that the general objectives [were] to serve solely as the basis for requiring a modification of the proposed site plan . . . ." Id., 532. The defendant, however, impermissibly "used these general objectives as the basis for denying the application altogether." Id.

[9] We note that the commission summarily stated that the site development plan application was not in conformance with the plan of conservation and development without specifying the provisions with which the application failed to comply. Accordingly, we are unable to ascertain which facts support this conclusion.

[10] Section 41.2.3 provides in relevant part that "[a]ccess shall also conform to the following:

"a. Where reasonable alternate access is available, the vehicular access to the lot shall be arranged to avoid traffic use of existing local residential streets situated in or bordered by [r]esidence [d]istricts.

"b. The street giving access to the lot shall have traffic carrying capacity and shall have suitable paving and other improvements to accommodate the traffic generated by the proposed use as well as other existing traffic on the street.

"c. Provision shall be made for turning lanes and traffic controls within the street as may be necessary to provide safe access and avoid traffic congestion.

"d. Access driveways shall be of a design and have sufficient capacity to avoid back up of entering vehicles within any street.

"e. Driveways into the lot shall not exceed a grade of 8 % and shall conform to [t]own [o]rdinances or regulations of the State of Connecticut as applicable. Driveways connecting to a street shall not exceed a width of 30 feet unless a greater width is required by the [t]own [o]rdinance, the [c]ommission, or the State of Connecticut.

"f. Unless otherwise approved by the [c]ommission, there shall be no more than one (1) driveway entering any lot from any one street, except that there may be one (1) additional driveway for each 300 feet of lot frontage in excess of 150 feet." North Branford Zoning Regs., c. 232, art. IV, § 41.2.3.